FAIRFIELD COUNTY NATIONAL BANK *v.* JOHN DEMICHELY ET AL.

SPEZIALE, PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued October 14—decision released November 10, 1981

*Raymond F. Ross,* for the appellant (defendant).
*Samuel J. Henderson,* for the appellee (plaintiff).

PETERS, J. This is an action of foreclosure in which the only remaining issue between the parties is the propriety of the disbursement of mortgage funds by the mortgagee. The plaintiff, Fairfield County National Bank, brought an action against the defendant, John DeMichely, alleging default on two mortgages on a piece of real estate in Westport, one a purchase money mortgage and the other a construction mortgage. The defendant contests neither the execution of the mortgages nor his default but alleges, by way of defense and counterclaim, that he is entitled to recoup $20,000 which was wrongly disbursed by the plaintiff to the defendant's wife. The defendant appeals from the judgment for the plaintiff rendered after a full hearing by the trial court.

This case turns on the factual findings of the trial court which determined that the defendant had authorized the disputed disbursement. In its memorandum of decision, the trial court found that the defendant had executed two mortgages, a purchase money mortgage in the amount of $12,000 on April 14, 1969, and a construction mortgage in the amount of $50,000 on October 24, 1969. At the October closing, the defendant received the first advance from the plaintiff under the construction mortgage. Because the defendant had no Connecticut checking account, he endorsed the check for this first advance to a bank officer with instructions to deposit the

check in his wife's account with the plaintiff bank. His wife thereupon drew a check in the same amount on her account payable to the general contractor on the construction project. The defendant does not dispute these events.

The defendant does dispute the trial court's additional findings that he instructed the plaintiff bank, at the time of the October closing, to deposit future advances to his wife's checking account at the bank, that he specifically repeated this instruction in March, 1970, when a second advance was due and payable, and that he received a credit memo, dated March 4, 1970, confirming disbursement of the second advance "as per your instructions." The plaintiff bank, acting in accordance with these instructions, credited the account of the defendant's wife with the $20,000 second advance. Those moneys were withdrawn by the defendant's wife the following day by means of a cashier's check which was endorsed by her and then by a third person who had no connection with the construction project.

The trial court's findings that the disputed oral instructions had been given to the plaintiff by the defendant are binding upon this court unless they are "clearly erroneous in light of the evidence and the pleadings in the record as a whole. Practice Book § 3060D; *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 564, 438 A.2d 759 (1980); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.,* 184 Conn. 10, 17, 441 A.2d 43 (1981). Our review of the evidence leaves us with no doubt that the trial court's comprehensive memorandum of decision finds ample support in the transcript. In

commercial cases as in others, judgments concerning the credibility of the witnesses and the resolution of conflicting factual claims fall within the province of the trial court. *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.*, supra, 18; *Toffolon* v. *Avon*, 173 Conn. 525, 530, 378 A.2d 580 (1977).

The defendant maintains that, even if the disputed instructions had been given, he was still entitled to recover on five grounds: (1) the oral instructions violated the statute of frauds, General Statutes § 52-550;[1] (2) the oral instructions were contrary to the parol evidence rule; (3) the oral instructions contravened the requirements of the statutes, General Statutes §§ 49-2 and 49-3,[2]

[1] "[General Statutes] Sec. 52-550. STATUTE OF FRAUDS; WRITTEN AGREEMENT OR MEMORANDUM. No civil action shall be maintained upon any agreement, whereby to charge any executor or administrator, upon a special promise to answer damages out of his own estate, or against any person upon any special promise to answer for the debt, default or miscarriage of another or upon any agreement made upon consideration of marriage or upon any agreement for the sale of real estate or any interest in or concerning it or upon any agreement that is not to be performed within one year from the making thereof, unless such agreement, or some memorandum thereof, is made in writing and signed by the party to be charged therewith or his agent; but this section shall not apply to parol agreements for hiring or leasing real estate, or any interest therein, for one year or less, in pursuance of which the leased premises have been or are actually occupied by the lessee, or any person claiming under him, during any part of such term."

[2] "[General Statutes] Sec. 49-2. INCLUSION OF TAXES AND OTHER ITEMS AS PART OF MORTGAGE DEBT. OPEN-END MORTGAGE. REVERSE ANNUITY MORTGAGE. (a) Premiums of insurance, taxes and assessments paid by the mortgagee and payments of interest or instalments of principal due on any prior mortgage or lien by any subsequent mortgagee or lienor of any property to protect his interest therein, are a part of the debt due the mortgagee or lienor.

"(b) Advancements may be made by a mortgagee for repairs, alterations or improvements and are a part of the debt due the mortgagee, provided (1) advancements for those repairs, alterations or improvements shall not be made if the indebtedness at the time of

governing construction mortgages; (4) the oral instructions required the bank to determine the scope of the wife's authority over the second advance; and (5) the oral instructions required the bank to ascertain whether the wife was acting beyond the scope of her limited authority.

the advancement exceeds the amount of the original mortgage debt; (2) the advancements shall not exceed the difference between the indebtedness at the time of the advancement and the original mortgage debt, if the original mortgage debt is greater than the then indebtedness; (3) the total amount of all of the advancements for repairs, alterations and improvements outstanding at any time shall not exceed one thousand dollars; (4) the original mortgage shall be executed and recorded after October 1, 1947; and (5) the terms of repayment of the advancements shall not increase the time of repayment of the original mortgage debt.

"(c) Advancements may also be made by a mortgagee, or the assignee of any mortgagee, under an open-end mortgage to the original mortgagor, or to the assign or assigns of the original mortgagor who assume the existing mortgage, or any of them, and any such mortgage debt and future advances shall, from the time such mortgage deed is recorded, without regard to whether the terms and conditions upon which such advances will be made are contained in the mortgage deed and, in the case of an open-end mortgage securing a commercial revolving loan or a letter of credit, without regard to whether the authorized amount of indebtedness shall at that time or any time have been fully advanced, be a part of the debt due such mortgagee and be secured by such mortgage equally with the debts and obligations secured thereby at the time of recording the mortgage deed and have the same priority over the rights of others who may acquire any rights in, or liens upon, the mortgaged real estate subsequent to the recording of such mortgage deed, provided (1) the heading of any such mortgage deed shall be clearly entitled 'Open-end Mortgage;' (2) the mortgage deed shall contain specific provisions permitting such advancements and, if applicable, shall specify that such advancements are made pursuant to a commercial revolving loan agreement or a letter of credit; (3) the mortgage deed shall state the full amount of the loan therein authorized; (4) the terms of repayment of such advancements shall not extend the time of repayment beyond the maturity of the original mortgage debt; (5) such advancements shall be secured or evidenced by a note or notes signed by the original mortgagor or mortgagors or any assign or assigns of the original mortgagor or mortgagors who assume the existing mortgage, or any of them, but no note shall be required with respect to any advancements made pursuant to a

The first three of these arguments maintain that, for the reasons alleged, instructions which are oral are illegal or ineffective. The defendant relies on the written terms of the construction mortgage specifying that the mortgage loan is "to be paid over to said grantor . . . ." There is no doubt that

commercial revolving loan agreement or a letter of credit as long as such advancements are recorded in the books and records of the original mortgagee or its assignee; (6) the original mortgage shall be executed and recorded after October 1, 1955; (7) the original mortgagor or mortgagors, or any assign or assigns of the original mortgagor or mortgagors who assume the existing mortgage, or any of them, are hereby authorized to record a written notice terminating the right to make such optional future advances secured by such mortgage or limiting such advances to not more than the amount actually advanced at the time of the recording of such notice, provided a copy of such written notice shall also be sent by registered or certified mail, postage prepaid and return receipt requested, to the mortgagee, or a copy of such written notice shall be delivered to the mortgagee by a proper officer or an indifferent person and a receipt for the same received from the mortgagee, and such notice, unless a later date is recorded or specified in the notice, shall be effective from the time it is received by the mortgagee; (8) except that if any such optional future advance or advances are made by the mortgagee, or the assignee of any mortgagee, to the original mortgagor or mortgagors, or any assign or assigns who assume the existing mortgage, or any of them, after receipt of written notice of any subsequent mortgage, lien, attachment, lis pendens, legal proceeding or adjudication against such real property, then the amount of any such advance, other than an advance made pursuant to a commercial revolving loan agreement or a letter of credit, shall not be a priority as against any such mortgage, lien, attachment, lis pendens or adjudication of which such written notice was given; (9) any notice given to the mortgagee under the terms of this subsection shall be deemed valid and binding upon the original mortgagee or any assignee of the original mortgagee from the time of the receipt of such notice by such mortgagee or assignee. For the purposes of this subsection, 'commercial revolving loan' means a loan to a foreign or domestic corporation organized for profit and engaged primarily in commercial, manufacturing or industrial pursuits, which loan entails advances of all or part of the loan proceeds and repayments of all or part of the outstanding balance of the loan from time to time.

"(d) (1) Any mortgage to secure advancements made by a mortgagee or its assignee to a mortgagor pursuant to the terms of a

the defendant is the grantor. He argues that the written commitment to pay "said grantor" may not be modified except by another writing supported by new consideration. The predicate to all three arguments is the proposition that the designation of an agent to receive proceeds on

mortgage securing a reverse annuity mortgage loan, as defined in subdivision (5) of subsection (a) of section 36-9g, shall be sufficiently definite and certain and valid to secure all money actually advanced pursuant to and in accordace with its terms, whether at or subsequent to closing of the loan, up to but not exceeding the full amount of the loan therein authorized with the same priority as if all such money had been advanced at the time such mortgage was delivered if such mortgage sets forth: (A) That it is a 'reverse annuity mortgage loan' and contains a reference to subdivision (5) of subsection (a) of section 36-9g; (B) the full amount of the loan authorized; (C) a statement of the dates on which such advancements are to be made and the amounts of such advancements; and (D) the events which will give rise to the maturity of the loan.

"(2) The mortgagee or its assignee and the mortgagor may subsequently modify the dates set forth in the mortgage for advancements by a writing setting forth such modification signed by the mortgagee or its assignee and the mortgagor and recorded upon the proper land records. Such modification shall in no way limit or otherwise affect the priority of such mortgage."

"[General Statutes] Sec. 49-3. MORTGAGE SECURING FUTURE ADVANCEMENTS. (a) Any mortgage to secure future advancements of money for construction or repair of buildings or improvements on land in this state, including site improvements of every kind with or without the construction or repair of any buildings, is sufficiently definite and certain and valid to secure all money actually advanced under and in accordance with its provisions, up to but not exceeding the amount of the full loan therein authorized, with the same priority as if it had been advanced at the time the mortgage was delivered, (1) if the mortgage contains a description of the loan in substantially the following form: 'Whereas buildings or improvements on said premises are in process of construction or repair, or to be erected or repaired; and whereas the said grantee has agreed to make the loan herein described to be paid over to said grantor in instalments as the work progresses, the time and amount of each advancement to be at the sole discretion and upon the estimate of said grantee, so that when all of the work on said premises shall have been completed to the satisfaction of said grantee, said grantee shall then pay over to said grantor any balance necessary to complete the full loan of $....; and whereas the grantor agrees to complete

behalf of a grantor constitutes a modification of a mortgage contract. The defendant has provided no authority in support of this proposition, nor have we been able to discover any. Unless a statute provides to the contrary; see, e.g., General Statutes § 20-325a (b);[3] *Thornton Real Estate, Inc.* v.

the erection or repair of said buildings to the satisfaction of said grantee within a reasonable time from the date hereof or at the latest on or before .... months from this date' or (2) whenever one or more advances are to be made when a certain event or condition occurs, if The mortgage contains the pertinent portions of the above clause, and such additional clauses as shall set forth with reasonable certainty and accuracy the particular sums which are to be advanced and the event or condition which determines when such sums are to be advanced to the grantor. A mortgage that otherwise complies with subdivision (1) of this subsection shall be valid notwithstanding any provision in any other agreement between the mortgagee and mortgagor that sets forth either particular sums which are to be advanced or the event or condition which determines when such sums are to be advanced, or both, whether or not such other agreement is recorded on the land records. Nothing herein invalidates any mortgage which would be valid without this subsection.

"(b) The parties may subsequently modify the time set forth in the mortgage for the grantor to complete the erection or repair of said buildings or improvements as well as the payment dates for interest and principal necessitated by the change in the completion date by a writing to that effect, signed by the parties and recorded upon the proper land records. The modification shall in no way affect or limit the priority of the mortgage.

"(c) If the mortgagor under a mortgage to secure future advances containing a description of the loan as specified in subsection (a) hereof is in default under the mortgage or note, the mortgagee may complete the erection or repair and the cost thereof shall be a part of the debt due the mortgagee and secured by the mortgage, provided in no such case may the total debt due exceed the face amount of the note."

[3] "[General Statutes] Sec. 20-325a. ACTIONS TO RECOVER COMMISSIONS ARISING OUT OF REAL ESTATE TRANSACTIONS. . . . (b) No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the

*Lobdell,* 184 Conn. 228, 230, 439 A.2d 947 (1981); principals may act through agents; Restatement (Second), Agency (1958) § 17; and may appoint agents "by written or spoken words or other conduct." Restatement (Second), Agency (1958) § 26. We have held that our statute of frauds; General Statutes § 52-550; which expressly permits a principal to be bound by the action of an agent, does not require the agency itself to be memorialized by a writing. *Gruskin* v. *Allyn,* 144 Conn. 541, 543, 135 A.2d 361 (1957). In the particular context of construction mortgages, the subsequent designation of contractors and subcontractors as payees is hardly such a departure from commercial practices as to require a finding that such a designation is beyond the original contemplation of the parties. See generally Osborne, Nelson & Whitman, Real Estate Finance Law (1979) §§ 12.1, 12.7, 12.10. Similarly, in the case before us, the undisputed events surrounding the disbursement of the first advance support the conclusion that disbursement of the second advance to the defendant's wife was not a modification but was within the contemplation of the parties ab initio.

The gravamen of the defendant's complaint is not really that the plaintiff *could not* honor oral instructions but that it *did not* do so because it failed to police the use of the proceeds of the second advance after depositing these proceeds in the bank account of the defendant's wife. In the defendant's view, the plaintiff had authority to disburse funds to the defendant's wife only for the limited purpose, implemented in the first advance, of assuring ex-

names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the parties thereto."

peditious payment of the general contractor. The short answer to this complaint, which is at the heart of the defendant's fourth and fifth arguments, is that the defendant failed to prove to the trial court that he gave, or that the plaintiff accepted, such a special charge. The defendant might have requested that payment be made jointly to his wife and to the general contractor, but he did not do so. Under the modern law of negotiable instruments, even if the defendant's wife were deemed to have taken the second advance as a trustee for the benefit of the general contractor, those dealing with the defendant's wife as trustee would only be required themselves to pay value consistent with the terms of the trust. In the absence of actual knowledge to the contrary, they would be entitled to assume that she would honor her fiduciary obligations. Compare General Statutes §§ 42a–3–206 (4) and 42a–3–304 (4) (e).[4]

Finally, even if the trial court had found that the plaintiff had departed from its oral instructions, the court also found facts which would demonstrate ratification of such conduct by the defendant. See

---

[4] "[General Statutes] Sec. 42a–3–206. EFFECT OF RESTRICTIVE ENDORSEMENT. . . . (4) The first taker under an endorsement for the benefit of the endorser or another person must pay or apply any value given by him for or on the security of the instrument consistently with the endorsement and to the extent that he does so he becomes a holder for value. In addition such taker is a holder in due course if he otherwise complies with the requirements of section 42a–3-302 on what constitutes a holder in due course. A later holder for value is neither given notice nor otherwise affected by such restrictive endorsement unless he has knowledge that a fiduciary or other person has negotiated the instrument in any transaction for his own benefit or otherwise in breach of duty."

"[General Statutes] Sec. 42a–3–304. NOTICE TO PURCHASER. . . . (4) Knowledge of the following facts does not of itself give the purchaser notice of a defense or claim . . . (e) that any person negotiating the instrument is or was a fiduciary . . . ."

*Hartford Accident & Indemnity Co.* v. *South Windsor Bank & Trust Co.,* 171 Conn. 63, 72, 368 A.2d 76 (1976). The defendant allegedly discovered the unauthorized disbursement to his wife in late March or April, 1970. Although he complained to the plaintiff by telephone, personally and through his attorney, he continued until August to make instalment payments on his mortgage and continued, until 1974, to live with his wife.

In light of all of the circumstances, the trial court could reasonably have concluded in fact and in law that the defendant had failed to prove his defense and counterclaim.

There is no error.

In this opinion the other judges concurred.