CONCETTA FERRI v. PYRAMID CONSTRUCTION COMPANY

SPEZIALE, C. J., PETERS, HEALEY, ARMENTANO and SHEA, Js.

Argued February 9—decision released April 13, 1982

*David J. Elliott,* with whom was *Jane A. Boyle,* for the appellant (defendant).

*F. Timothy McNamara,* for the appellee (plaintiff).

PETERS, J. This is an appeal from a judgment concluding that the defendant's improvement of its land damaged the plaintiff's adjoining property by causing it to become flooded. The plaintiff, Concetta Ferri, sued the defendant, Pyramid Construction Company, in a three count complaint alleging negligence, nuisance and trespass. The trial court found the issues for the plaintiff on all counts and awarded her monetary damages. The defendant has appealed.

The memorandum of decision of the trial court establishes the following facts. The plaintiff and the defendant are adjoining landowners in Bloomfield. The defendant received approval from the Bloomfield town plan and zoning commission to build a garden apartment complex on its land. In

the process of constructing this development, the defendant filled a large portion of its fourteen-acre tract, changing the swale line on its property both horizontally and vertically. As a result of the defendant's grading and filling, the defendant's land was raised and a great deal of its formerly natural marsh area was covered over. In constructing the apartment complex, the defendant departed in several ways from the building plans approved by the town plan and zoning commission. The fill was beyond what the commission had approved, and the swale bed was thus shifted closer to the plaintiff's property line. The defendant also used covered metal pipe in place of the specified reinforced concrete pipe, which resulted in a reduction in the pipes' water carrying capacity; elsewhere it installed drainage pipes reduced in size from those approved. The defendant allowed silt to accumulate in the pipes, further reducing their water carrying capability, and failed entirely to install certain sections of pipes and catch basins. In all, the defendant's construction resulted in a great increase in the water flow in the swale. Because the remaining marsh area was diminished and silted, its capacity to hold water was significantly reduced. As a result, the plaintiff's property is now often flooded.

On the basis of these factual determinations, and its inspection of the property, the trial court concluded that the defendant was negligent in its construction of the garden apartments and the appurtenant drainage system, had created and maintained a nuisance, and had trespassed on the plaintiff's land and building by depositing water, silt and trash. Measuring damages by the diminished value of the plaintiff's property, the trial court

awarded the plaintiff $16,992. The defendant urges three grounds of appeal: the trial court erred in its application of legal principles, since it should not have relied on the common enemy doctrine; the trial court erred in its finding of fact on the issue of proximate cause; and the trial court erred in its assessment of damages.

The principal ground of appeal is the defendant's argument that the trial court erred in its view of the substantive law regarding liability for repulsion and discharge of surface waters. The defendant maintains that the trial court relied upon a rule of liability called the "common enemy doctrine" which was modified by this court, in *Page Motor Co.* v. *Baker,* 182 Conn. 484, 488, 438 A.2d 739 (1980), subsequent to the trial of this case. The defendant urges that *Page Motor* is applicable to the present facts, that it should be applied retroactively to this case, and that it requires us to order a new trial. We disagree with the defendant's reading of *Page Motor* and therefore find no error in the substantive law applied by the trial court.

The Connecticut law on the repulsion or diversion of surface waters before *Page Motor* was summarized as follows in *Tide Water Oil Sales Corporation* v. *Shimelman,* 114 Conn. 182, 189–90, 158 A. 229 (1932): "A landowner is under no duty to receive upon his land surface water from the adjacent properties, but in the use or improvement of it he may repel such water at his boundary. On the other hand, he incurs no liability by reason of the fact that surface water falling or running onto his land flows thence to the property of others in its natural manner. But he may not use or improve his land in such a way as to increase the total

volume of surface water which flows from it to adjacent property, or as to discharge it or any part of it upon such property in a manner different in volume or course from its natural flow, to the substantial damage of the owner of that property." The rule of *Tide Water Oil* was a modified version of the common enemy doctrine. See 93 A.L.R.3d 1193 (1979). Although it granted immunity to a landowner who merely repelled surface water, it imposed liability upon a landowner who diverted surface water in such a way as to damage substantially the property of his neighbor. See also *Falco* v. *James Peter Associates, Inc.,* 165 Conn. 442, 445–46, 335 A.2d 301 (1973); *Taylor* v. *Conti,* 149 Conn. 174, 177, 177 A.2d 670 (1962).

In *Page Motor,* this court substituted the reasonable use doctrine for the first branch of the rule of *Tide Water Oil.* We announced that a repelling landowner would no longer enjoy immunity in dealing with surface water. Instead, we held (pp. 488–89) that, in dealing with surface water, the landowner would be "entitled to take only such steps as are reasonable, in light of all the circumstances of relative advantage to the actor and disadvantage to the adjoining landowners, as well as social utility." In increasing the possible liability of a landowner repelling surface waters, we did not address, and certainly did not diminish, the existing liability of a landowner diverting surface water under the second branch of the rule of *Tide Water Oil.*

Given the facts found by the trial court, the effect of the defendant's construction of its garden apartments was not a repulsion but rather a diversion of surface waters upon the property of the plaintiff. The effect of the defendant's improvement of its

land was to increase the runoff of water flowing upon the plaintiff's land. This case therefore falls under the second branch of the rule of *Tide Water Oil* and is not affected by our decision in *Page Motor*.

Our reading of the trial court's memorandum of decision persuades us that the trial court correctly applied the substantive law governing the discharge of surface waters upon neighboring land. The defendant's second claim of error concerning the imposition of substantive liability asserts that the plaintiff failed to prove that the defendant's conduct was the proximate cause of the plaintiff's injury. The defendant argues that the plaintiff's failure to eliminate any alternative causes of her flood damage proposed at trial reduces the court's finding of proximate cause to an impermissible speculation. We reject both the argument and its conclusion.

We have recently reasserted our definition of a proximate cause as "[a]n actual cause that is a substantial factor in the resulting harm . . . ." *Coburn* v. *Lenox Homes, Inc.,* 186 Conn. 370, 383, 441 A.2d 620 (1982); see *Ferndale Dairy, Inc.* v. *Geiger,* 167 Conn. 533, 538, 356 A.2d 91 (1975); *Merhi* v. *Becker,* 164 Conn. 516, 521, 325 A.2d 270 (1973); Prosser, Torts (4th Ed. 1971) § 41; Wright & FitzGerald, Connecticut Law of Torts (2d Ed. 1968) § 32. Under the substantial factor doctrine, the trial court could accept the plaintiff's evidence of causation without requiring that the defendant's alternative theories be expressly and entirely discredited.

Since the determination of proximate cause is ordinarily a question of fact; *Coburn* v. *Lenox*

*Homes, Inc.,* supra, 384; *Ferndale Dairy, Inc.* v. *Geiger,* supra, 538; we will review the trial court's finding only to ascertain whether it is clearly erroneous in light of the record before us. Practice Book § 3060D; *Fairfield County National Bank* v. *DeMichely,* 185 Conn. 463, 465, 441 A.2d 569 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980). Here the trial court heard testimony by the plaintiff, her son, and her neighbor that flooding occurred on her property and on an adjacent lot only after construction of the defendant's apartment complex; a civil engineer called by the plaintiff further testified that this construction significantly increased the water flow onto the plaintiff's property, while other local construction projects had only a negligible effect. The record thus amply supports the trial court's finding that construction of the defendant's apartment complex was a proximate cause of the plaintiff's harm.

The defendant next raises two objections to the award of $16,992 in damages to the plaintiff. First, it argues that the trial court employed the wrong measure of damages. Second, it insists that the amount of the award is unsupported by the record.

In its memorandum of decision, the trial court explained the $16,992 figure as the difference between the value of the plaintiff's property with and without the flooding problem. Since an expert witness testified that the plaintiff's property damage could be remedied by repairs costing $3500, the defendant argues that the trial court was bound to measure damages by the cost of repairs rather than by the diminution in value.

The basic measure of damages for injury to real property is the resultant diminution in its value. *Blakeman* v. *Tobin,* 177 Conn. 597, 598, 419 A.2d 336 (1979); *Falco* v. *James Peter Associates, Inc.,* 165 Conn. 442, 446, 335 A.2d 301 (1973). There is, however, a well established exception to this formula; " 'such diminution in value may be determined by the cost of repairing the damage, provided, of course, that that cost does not exceed the former value of the property and provided also that the repairs do not enhance the value of the property over what it was before it was damaged.' *Whitman Hotel Corporation* v. *Elliott & Watrous Engineering Co.,* 137 Conn. 562, 573, 79 A.2d 591 (1951); *Falco* v. *James Peter Associates, Inc.,* 165 Conn. 442, 446, 335 A.2d 301 (1973)." *Blakeman* v. *Tobin,* supra, 598.

The permissive language of *Whitman Hotel* clearly leaves the selection of the repair measure in the trial court's discretion, limited only by the two attached provisos which are not claimed to be relevant here. The defendant relies on the testimony of its expert witness, a civil engineer, that adding fill to the plaintiff's property at a cost of approximately $3500 would adequately protect the property from future flood damage.[1] The witness further testified, however, that his proposal was "a very rough estimate." When asked by the plaintiff's counsel whether "in your opinion money damages would take care of this matter," the witness expressed doubt over his qualifications for answer-

---

[1] The witness testified that this repair would protect the property against flooding caused by a storm of an intensity likely to occur every ten years. On cross-examination, he conceded that it would not protect against a more severe storm, one likely to occur every twenty-five years.

ing the question. No other evidence concerning the cost or efficacy of the proposed repairs was presented by either party.

The credibility of "expert witnesses and the weight to be accorded to their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." *New Haven Water Co.* v. *Board of Tax Review,* 166 Conn. 232, 240, 348 A.2d 641 (1974); see *Uniroyal, Inc.* v. *Board of Tax Review,* 174 Conn. 380, 391, 389 A.2d 734 (1978); *Greenfield Development Co.* v. *Wood,* 172 Conn. 446, 451, 374 A.2d 1084 (1977). On the record before us, the trial court could reasonably have rejected the defendant's expert's testimony that the repair he proposed was an adequate and appropriate remedy. The trial court is not compelled to accept any evidence offered on possible repairs as the proper measure of damages for harm to real property.

The defendant also claims that the damage award is erroneous because it is unsupported by the record. In its memorandum of decision the trial court found that the plaintiff's property was worth $70,800 without the flooding problem caused by the defendant's construction project and $53,808 with that problem. The court concluded that "[t]he difference represents a loss in value as a result of the flooding of $16,992" and awarded that amount in damages. The only explanation offered by the trial court for the precise nature of the plaintiff's loss occurs in the following paragraph of the opinion with the statement that the "[p]laintiff has lost rental value in her property as a result of the flooding." Since there was evidence at trial that the plaintiff's basement apartment was continuously

rented, the defendant argues, the trial court could not consider the potential loss of rental income as an element of damages.

To recover damages for injury to her property the plaintiff must present "evidence which affords a reasonable basis for measuring" her loss. *Johnson* v. *Flammia,* 169 Conn. 491, 501, 363 A.2d 1048 (1975); see *Falco* v. *James Peter Associates, Inc.,* 165 Conn. 442, 445, 335 A.2d 301 (1973). "Mathematical exactitude in the proof of damages is often impossible, but the plaintiff must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate." *Falco* v. *James Peter Associates, Inc.,* supra, 445; see *Johnson* v. *Healy,* 183 Conn. 514, 515, 440 A.2d 765 (1981).

At trial the plaintiff testified that because of the flooding problem the tenants in her basement apartment stayed only for brief periods.[2] Her appraiser testified that his estimate of damage to the property was calculated on the basis of the plaintiff's inability to rent the apartment continuously. Assuming the untenantability of the apartment, he found the value of the property to be $56,000 or $14,800 less than its fair market value of $70,800 without the flooding problem. On cross-examination the plaintiff conceded that the apartment had been continuously rented from 1973 to 1979 and that she had lost no rental income.

In making its award the trial court accepted the plaintiff's appraisal of the property's fair market

---

[2] The plaintiff's testimony on the average length of a tenant's stay was ambiguous: "They don't last as soon as they see the flooding. They stay for a few months and then they leave and they don't like the mosquitoes, the smell around the house. They don't last more than two years and then they go. It's because they can't find apartments they stay a little longer."

value and her evidence of lost rental value. Although the record suggests that the plaintiff may in the future have difficulties in finding or retaining tenants for her basement apartment, it also conclusively establishes the fact that no such loss has yet occurred. In these circumstances, the trial court could not reasonably base its award on a possible future loss, and a new hearing on damages is required. *Slattery* v. *Maykut,* 176 Conn. 147, 151, 405 A.2d 76 (1978).

There is error in part, the judgment is affirmed except as to the amount of damages awarded and a new trial is ordered limited to that issue.

In this opinion the other judges concurred.