## GORRA REALTY, INC. *v.* MELVIN JETMORE, JR., ET AL.
### (12433)

PETERS, C. J., HEALEY, CALLAHAN and TAMBORRA, Js.[1]

Argued February 14—decision released June 10, 1986

[1] The parties have agreed to have this case decided by four justices.

*Joseph E. Moukawsher,* with whom, on the brief, was *Elissa T. Wright,* for the appellant (plaintiff).

*Hyman Wilensky,* with whom, on the brief, was *Myron Bell,* for the appellees (defendants).

PETERS, C. J. This case concerns the validity of municipal action, pursuant to the emergency provisions of the state building code, declaring parts of a building to be unsafe and prohibiting its further residential occupancy. The plaintiff, Gorra Realty, Inc., the owner of the Lena Building located at 153–165 State Street, New London, brought an action against the defendants Melvin Jetmore, the building official of the city of New London, and the city of New London, to enjoin the posting of the building and to recover compensatory damages, punitive damages and attorney's fees. The trial court, after a hearing, rendered judgment for the defendants, and the plaintiff has appealed.

The trial court's memorandum of decision contains the following finding of facts. The Lena Building is an historic building. It is listed in the National Register of Historic Places and located in the historic district of New London, adjacent to the New London municipal building on Captain's Walk. It contains four commercial establishments as well as twenty-three residential apartments.

Acting on the basis of official inspections and complaints from tenants, the defendant Jetmore, as building official of the defendant city, first posted the Lena Building as unsafe on May 19, 1980. That posting was removed after a conference at which the plaintiff promised repairs. The plaintiff had sought renovation funds under the HUD 312 program but such funds proved to be unavailable. Thereafter, on July 7, 1981, at a meeting held in the city manager's office, the plaintiff was notified that the Lena Building would be posted

again. After a dispute about further inspections by the building official's office, the residential part of the building was posted as unsafe on July 27, 1981.

In posting the Lena Building on July 27, 1981, the building official purported to act pursuant to § 125.0[2] of the Connecticut state building code, which permits emergency orders for the vacating of unsafe buildings.[3] On that date, the Lena Building, as a whole, was struc-

---

[2] The Connecticut State Basic Building Code was revised in 1981, effective September 1, 1981, shortly after the incidents at issue in this case occurred. In the revision, § 125.0 became § 124.0. Throughout this opinion, we will refer to the Connecticut State Building Code (Rev. to 1971) which was in effect at the times in question.

[3] Section 125.0 of the Connecticut State Building Code (Rev. to 1971) provides: "Section 125.0 Emergency Measures

"125.1 Vacating Buildings: When, in the opinion of the building official, there is actual and immediate danger of failure or collapse of a building or structure or any part thereof which would endanger life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the building, the building official is hereby authorized and empowered to order and require the inmates and occupants to vacate the same forthwith. He shall cause to be posted at each entrance to such building a notice reading as follows:

'THIS BUILDING IS UNSAFE AND ITS USE OR OCCUPANCY HAS BEEN PROHIBITED BY THE BUILDING OFFICIAL'

and it shall be unlawful for any person to enter such building or structure except for the purpose of making the required repairs or of demolishing the same.

"125.2 Temporary Safeguards: When, in the opinion of the building official, there is actual and immediate danger of collapse or failure of a building or structure or any part thereof which would endanger life, he shall cause the necessary work to be done to render such building or structure or part thereof temporarily safe, whether or not the legal procedure herein described has been instituted.

"125.3 Closing Streets: When necessary for the public safety, the building official may temporarily close sidewalks, streets, buildings and structures and places adjacent to such unsafe buildings, and prohibit the same from being used.

"125.4 Emergency Repairs: For the purposes of this section the building official shall employ the necessary labor and materials to perform the required work as expeditiously as possible.

"125.5 Costs of Emergency Repairs: Costs incurred in the performance of emergency work shall be paid from the municipal treasury on certifi-

turally sound. It was not in actual and immediate danger of collapse or failure and no lives were in danger therefrom. The building official had previously issued abatement orders concerning violations of the city housing, electrical and fire safety codes, but he did not claim that these violations rendered the building as a whole structurally unsafe. Despite the absence of present structural danger to the building as a whole, the building official maintained that emergency posting was appropriate because the condition of stairs and ceilings in the Lena Building indicated that parts of the structure were in danger of collapse.[4]

Two days after the posting, the plaintiff sought and obtained a temporary injunction for the removal of the placards prohibiting occupancy of the Lena Building. The injunction remained in effect until the conclusion of the proceedings in the trial court. During that time, the city of New London through its welfare department housed thirty-two persons in the building. No tenants were shown to have vacated the premises because of the posting, and the plaintiff suffered no loss of rental

cate of the building official; and the legal authority of the municipality shall institute appropriate action against the owner of the premises where the unsafe building or structure was located for the recovery of such costs."

Under § 108 of the building code, the local building official is charged with enforcing the state building code. See footnote 13, infra.

[4] Inspections by employees of the building department revealed the following conditions in the building:

"(a) The front stairway was being supported by a temporary metal [lally] column. It was not known how long the column had been there, why it was placed there or exactly the extent of support it provided;

"(b) Both the front and rear staircases were not level and were listing to a substantial degree;

"(c) The staircases were pulling away from the wall and were not securely fastened;

"(d) Some ceilings and plaster in the hallways and apartments had fallen; some were cracked and sagging and in danger of falling;

"(e) General deterioration and vandalism to some plumbing facilities caused water damage to ceilings causing them to fall in some apartments.

"(f) Paint from walls and ceilings containing lead was peeling and falling."

thereby. The plaintiff's building was treated no differently than any other building situated in the historic district of the city of New London.

In its pleadings, the plaintiff sought injunctive and monetary relief, alleging violations of the federal and the state constitutions and of 42 U.S.C. § 1983.[5] The trial court found all the issues for the defendants.

With respect to the plaintiff's claimed right to an injunction, the trial court found that the plaintiff had an adequate remedy at law either under § 126 of the state building code or under § 122 of the New London housing code. In addition, the court determined that injunctive relief was unwarranted because the plaintiff had no due process right to notice or hearing preceding an emergency posting. Finally, the court concluded that the building official's decision to post the building was warranted because there were indications that portions of the structure were in danger of collapse.

With respect to the plaintiff's claimed right to common law compensatory damages, the trial court found that the plaintiff had failed to prove that the posting had caused any financial loss to the plaintiff. Since the building was never vacated, its short-lived posting did not cause the plaintiff to lose rental income.

With respect to the plaintiff's claim for damages under 42 U.S.C. § 1983, the trial court found that the plaintiff's constitutional rights had not been violated. The court reiterated that there was no due process right

---

[5] Title 42 of the United States Code, § 1983 provides in pertinent part: "CIVIL ACTION FOR DEPRIVATION OF RIGHTS. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

to a hearing prior to an emergency posting and concluded that emergency posting did not constitute a taking without just compensation. Finally, the court found that the plaintiff had failed to prove intentional, arbitrary, discriminatory or harassing conduct on the part of the defendant Jetmore. The court specifically found that the building official's insistence on reasonable inspections of the Lena Building was justified by virtue of his statutory responsibility for the enforcement of the standards promulgated by the building and housing codes.

On appeal, the plaintiff claims that the trial court erred: (1) in finding that the plaintiff had an adequate remedy at law; (2) in concluding that there was credible evidence to support the defendant Jetmore's decision to post the building; (3) in finding that it was proper to post the plaintiff's building without prior notice and hearing when the building as a whole was structurally sound; (4) in declining to find an exemption from compliance with the building code for the plaintiff's building, either as a prior lawful existing use or because of its status as an historic building; and (5) in various evidentiary rulings. We find no reversible error.

I

The first issue on appeal relates to the propriety of the trial court's ruling that the availability of administrative remedies precluded the plaintiff's access to injunctive relief. The plaintiff maintains that neither the state building code nor the New London municipal housing code affords him an adequate remedy at law. We agree.

The trial court was of the opinion that § 126 of the state building code (Rev. to 1971) gave the plaintiff an administrative remedy through its provision for the

appointment of a "board of survey."[6] In this conclu-
sion, the trial court was in error, for two reasons. First,
it is doubtful that this section was applicable because
it relates only to a building owner "who has been served
with an unsafe order and notice," a procedure not fol-
lowed in this case. Second, the section expressly
excludes "cases of emergency," impliedly cases
governed by § 125, from the ambit of the "board of sur-
vey." It is entirely plausible that emergency orders
should be immediately effective absent judicial inter-
vention in the form of an injunction.

In the alternative, the trial court found that the plain-
tiff might have invoked § 122 of the New London hous-
ing code, which provides for a hearing before the city's
code enforcement committee.[7] This finding cannot be

[6] Section 126 of the Connecticut State Building Code (Rev. to 1971) pro-
vides: "Section 126.0 Board of Survey

"126.1 Application for Survey: The owner of a building or structure or
his duly authorized representative who has been served with an unsafe order
and notice to make such structure safe, secure or habitable or to take down
and remove such structure shall have the right, except in cases of emer-
gency, to demand the appointment of a board of survey if he deems such
order to be unnecessary, improper or unreasonable. Such demand shall be
in writing with a statement of the reasons therefor.

"126.2 Constitution of Board of Survey: The board of survey shall con-
sist of three persons, one of whom shall be the building official or an assistant
designated by him; another shall be the owner or his legal representative,
or a licensed professional engineer or architect, or a qualified builder desig-
nated by the owner; and the third shall be a licensed professional engineer
or architect chosen jointly by the other two members or designated by a
justice of the court of record in case of failure of agreement."

[7] Section 122 of the New London Housing Code (Rev. to 1971) provides
in pertinent part: "122.0 Appeals

"Any person affected by any notice which has been issued in connection
with the enforcement of any provision of this ordinance may request, and
upon the payment of a ten dollar fee payable to the Treasurer of the City
of New London, shall be granted a hearing on the matter before the Code
Enforcement Committee created in section 115.0 of this ordinance; pro-
vided that such person shall file in the office of the Building Official a writ-
ten petition requesting such hearing and setting forth a brief statement
of the grounds thereof within 20 days after the day the notice was served.
Upon receipt of such petition the Building Official shall notify said com-

sustained because the appeal procedure in § 122 is limited to notices "issued in connection with the enforcement of any provision of this ordinance." "[T]his ordinance" is the housing code, which does not purport to encompass enforcement of the state building code. See New London Housing Code (Rev. to 1971) §§ 101, 102.[8] Although legislative bodies may authorize overlapping and consistent enforcement of building code and housing code violations; see *Dukes* v. *Durante,* 192 Conn. 207, 215, 471 A.2d 1368 (1984); *Bencivenga* v. *Milford,* 183 Conn. 168, 172–73, 438 A.2d 1174 (1981); there is nothing in the present record to indicate that New London has chosen to do so.

## II

The trial court's denial of the plaintiff's claim for injunctive relief was not premised solely on the availa-

mittee to set a time and place for such hearing and shall give the petitioner five days written notice thereof. At such hearing the petitioner shall be given the opportunity to be heard and to show why such notice should be modified, extended or withdrawn or a variance granted. The hearing shall be commenced not later than 60 days after the day on which the petition was filed. Provided that upon application of the petitioner the said committee may postpone the date of the hearing for a reasonable time beyond such 60 day period, if in its judgment the petitioner has submitted a good and sufficient reason for such postponement, but in no event shall said hearing be postponed longer than 60 days."

[8] Sections 101.0 and 102.0 of the New London Housing Code (Rev. to 1971) provide: "101.0 Application of Building Code

"Any alterations to buildings, or changes of use therein, which may be caused directly or indirectly by the enforcement of this code shall be done in accordance with applicable sections of the Building Code of New London.

"102.0 Conflicts With Other Ordinances

"Where a provision of this code is found to be in conflict with a provision of any zoning, building, fire, safety or health ordinance or code of New London existing on the effective date of this code, the provision which establishes the higher standard for the promotion and protection of the safety and health of the people shall prevail. In any case where a provision of this code is found to be in conflict with a provision of any other ordinance or code of New London existing on the effective date of this code which establishes a lower standard for the promotion, and protection of the safety and health of the people, the provisions of this code shall prevail, and such other ordinances or codes are hereby declared to be repealed to the extent that they may be found in conflict with this code."

bility of administrative remedies. The trial court found that the action taken by the defendants was permissible because it comported both with statutory authorization for emergency measures and constitutional entitlements to due process and equal protection.[9] These are the matters addressed in the plaintiff's second and third claims of error, neither of which we find persuasive.

## A

The plaintiff maintains that the defendant's posting of its property was not warranted by § 125 of the state building code, entitled "Emergency Measures." Section 125.1 authorizes such posting when *"in the opinion* of the building official, there is actual and immediate danger of failure or collapse of a building or structure or *any part* thereof which would endanger life . . . ." (Emphasis added.) The trial court acknowledged that the evidence at trial "was in substantial conflict, especially as to the existence and extent of the claimed defective conditions of the Lena Building." The court found that, although the building as a whole was structurally sound, "the credible evidence supports Jetmore's decision to post the building because there were indications that portions of the structure were in danger of collapse." The plaintiff argues that this finding of fact was clearly erroneous. We disagree.

In reviewing a trial court's finding of fact to determine whether it is supported by the evidence; Practice Book § 3060D;[10] *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); we

---

[9] The plaintiff has not renewed on appeal his claim, raised at trial, that the posting of the Lena Building constituted an unconstitutional taking without compensation.

[10] "[Practice Book] Sec. 3060D. REVIEW BY THE SUPREME COURT

"The supreme court may reverse or modify the decision of the trial court if it determines that the decision is clearly erroneous in view of the evidence and pleadings in the whole record.

"If the supreme court deems it necessary to the proper disposition of

operate under established constraints. "It is the province of the trier of fact to weigh the evidence presented and determine the credibility and effect to be given the evidence. See *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 359, 294 A.2d 305 (1972). On appellate review, therefore, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. *State* v. *Avcollie,* 178 Conn. 450, 461, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980); *Hally* v. *Hospital of St. Raphael,* supra; *Busker* v. *United Illuminating Co.,* [156 Conn. 456, 458, 242 A.2d 708 (1968)]." *Swift & Co.* v. *Rexton,* 187 Conn. 540, 543, 447 A.2d 9 (1982); *Bieluch* v. *Bieluch,* 199 Conn. 550, 556, 509 A.2d 8 (1986).

The evidence upon which the court relied consisted of testimony reporting substantial defects in stairways, ceilings and paint. Of these the most serious was evidence that the front stairway was being supported by a temporary metal lally column, that the front and rear staircases were not level, and that the staircases were pulling away from the wall. In addition, there was evidence that some of the ceilings were in danger of falling.[11] The plaintiff did not deny that these conditions existed, but adduced expert testimony that none of these conditions made the building unsafe. Further, the plaintiff complains that the trial court did not elaborate its finding that portions of the Lena Building were in danger of collapse and did not expressly reconcile this finding with its earlier finding that the building as a whole was structurally sound. That complaint is, how-

the cause, it may remand the case for a further articulation of the basis of the trial court's decision.

"It is the responsibility of the appellant to provide an adequate record for review."

[11] There was also evidence that lead-based paint was peeling and falling from walls and ceilings, and that general deterioration of and vandalism to plumbing facilities had resulted in water damage to ceilings.

ever, addressed to the wrong forum. The plaintiff could have asked the trial court for further articulation of the basis for its decision. Practice Book § 3082.[12] Viewing the evidence in the light most favorable to supporting the finding of the trial court, and mindful that it was the plaintiff who bore the burden of proof to establish that its rights had been violated, we cannot find that the trial court clearly erred in determining that the building official could reasonably have believed that parts of the Lena building were in danger of collapse. The trial court was not bound by the opinion expressed by the plaintiff's experts. *Johnson* v. *Fuller,* 190 Conn. 552, 556, 461 A.2d 988 (1983); *Ferri* v. *Pyramid Construction Co.,* 186 Conn. 682, 690, 443 A.2d 478 (1982); *Colonial Finance Co.* v. *Brodsky,* 140 Conn. 391, 394–95, 100 A.2d 568 (1953). The plaintiff has nowhere argued that the building code requires the building official to have more than a reasonable opinion that emer-

---

[12] "[Practice Book] Sec. 3082. RECTIFICATION OF APPEAL; ARTICULATION

"Any motion seeking corrections in the transcript or the trial court record which depend on proof of matters not of record or seeking an articulation or further articulation of the decision of the trial court shall be made in the first instance to the judge of the trial court whence the appeal is taken or the reservation is made. The trial court may, either on its own motion or on a motion filed by any party, make such corrections or additions as are necessary for the proper presentation of the preliminary statement of issues or for the proper presentation of questions reserved; or the trial court may approve a stipulation of counsel that such a correction or addition be made, provided the motion or stipulation is presented before the appeal is ready to be assigned for hearing and only by leave of the supreme court thereafter. The action of the trial judge as regards such a correction or addition may be reviewed by the supreme court under Sec. 3108. Nothing herein is intended to affect the existing practice with respect to opening and correcting judgments and the records on which they are based.

"Corrections made before the record is printed shall be included in it. If the record has been printed, the chief justice may direct the chief clerk of the supreme court to make a supplemental printed record, to be printed and distributed in the same way as the original printed record, but in the absence of such a direction the chief clerk of the supreme court shall furnish the justices of the supreme court typewritten copies."

gency measures are required because existing conditions "in any part [of a building] . . . would endanger life." Connecticut State Building Code (Rev. to 1971) § 125.0.

B

In addition to challenging the substantive basis of the defendants' action, the plaintiff also maintains that the trial court erroneously concluded that the plaintiff had not been deprived of its constitutional rights under the federal and the state constitutions. The plaintiff's constitutional claim has two components. The plaintiff alleges that, even under the emergency provisions of § 125 of the state building code, it had a due process right to prior notice, hearing and an opportunity to respond to claimed violations, in advance of the posting of its property. Furthermore, the plaintiff alleges that it had a right to equal protection of the laws that was violated because the posting of its property was arbitrary, capricious and in retaliation for the refusal of the plaintiff to permit the defendants to inspect its premises. We agree with the trial court that the plaintiff failed to establish any constitutional violation.

The plaintiff's due process claim founders on the well established constitutional principle permitting summary administrative action in situations of emergency. *Hodel* v. *Virginia Surface Mining & Reclamation Assn.,* 452 U.S. 264, 299–301, 101 S. Ct. 2352, 69 L. Ed. 2d 1 (1981); *Calero-Toledo* v. *Pearson Yacht Leasing Co.,* 416 U.S. 663, 677–80, 94 S. Ct. 2080, 40 L. Ed. 2d 452 (1974). Our conclusion, supra, upholding the trial court's finding that the defendants justifiably invoked § 125 of the building code, places this case within the ambit of these precedents. In these circumstances, the plaintiff's due process rights are adequately protected by its access to judicial relief. See *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 119–20, 425 A.2d 576 (1979). In addition, it is noteworthy that the plain-

tiff in fact had ample warning that its building would be posted, both because of the posting that occurred in 1980 and because of the conference held on July 7, 1981.

The plaintiff's equal protection claim stands on a somewhat different footing because it rests on the factual proposition that the defendants acted arbitrarily, discriminatorily and vindictively in posting the plaintiff's property. The trial court found that these claims were not supported by the evidence: "While the relationship between the parties has been strained and adversarial, the plaintiff has not proven that defendant Jetmore acted improperly or outside his scope of authority. As building official, defendant Jetmore has reasonable rights of inspection and is required to uphold the standards promulgated by the codes. See New London Housing Code §§ 111, 114; Connecticut State Building Code (Rev. to 1971) § 108.[13] Jetmore's actions were within the scope of these appointed duties." The plaintiff has not appealed the trial court's dismissal of its claim that the defendants' inspections constituted an unreasonable search and sei-

---

[13] Section 111.0 of the New London Housing Code (Rev. to 1971) provides: "111.0 Enforcement Officer.

"It shall be the duty and responsibility of the Building Official of New London to enforce the provisions of the Housing Code as herein provided."

Section 114.0 of the New London Housing Code (Rev. to 1971) provides: "114.0 Inspections

"The Building Official is hereby authorized and directed to make inspections to determine the condition of dwellings, dwelling units, rooming units, and premises located within the City of New London, in order that he may perform his duty of safeguarding the health and safety of the occupants of dwellings and of the general public. For the purpose of making such inspections the Building Official is hereby authorized to enter, examine, and survey at all reasonable times all dwellings, dwelling units, rooming units, and premises. The owner or occupant of every dwelling, dwelling unit, and rooming unit, or the person in charge thereof, shall give the Building Official free access to such dwelling, dwelling unit, or rooming unit and its premises, at all times for the purpose of such inspection, examination, and survey. Each occupant of a dwelling or dwelling unit shall give the owner thereof, or his agent or employee, access to any part of such dwelling or

zure.[14] Nonetheless, it maintains that the trial court clearly erred in its finding that the plaintiff's property had not been singled out for adverse treatment.

Since we have determined that the defendants had the authority, in the light of the conditions prevailing at the Lena Building, to invoke emergency posting measures, the plaintiff's claim comes down to an assertion that the trial court erred in concluding that the plaintiffs had failed to prove that this authority was exercised in bad faith. Questions going to intent and motive, which require the drawing of inferences from proven facts, depend for their resolution upon an assessment of demeanor and credibility that is peculiarly within the province of the trier of fact. *Solomon* v. *Aberman,* 196 Conn. 359, 378–79, 493 A.2d 193 (1985); *Dadio* v. *Dadio,* 123 Conn. 88, 92–93, 192 A. 557 (1937). Our review of the evidence persuades us that the trial court did not clearly err in finding as it did. The plaintiff was afforded repeated opportunities to make the repairs that would have avoided the posting of its building. The plaintiff does not claim to have presented evidence indicating that other buildings, in like condition, were not posted.

dwelling unit, or its premises, at all reasonable times for the purpose of making such repairs and/or alterations as are necessary to effect compliance with the provisions of this ordinance or any lawful order issued pursuant to the provisions of this ordinance."

Section 108.0 of the Connecticut State Building Code (Rev. to 1971) provides: "Section 108.0 Duties and Powers of Building Official

"The building official shall enforce all the provisions of the Basic Code and all further rules and regulations adopted and promulgated thereunder relative to the mode or manner of construction and the materials to be used in the erection, addition to, alteration, repair, removal, demolition, installation of service equipment, and the location, use, occupancy and maintenance of all buildings and structures, except as may otherwise be specifically provided for by statutory requirements or as herein provided."

[14] The only allusion to search and seizure in the plaintiff's brief raises the matter only as part of the plaintiff's overall claim of discriminatory action by the defendants.

The plaintiff's amended statement of issues contains no reference to the legality of the defendants' inspections.

The issuance of an injunction is always discretionary with the trial court, even when irreparable harm has been shown. See, e.g., *Connecticut Light & Power Co.* v. *Holson Co.,* 185 Conn. 436, 440–41, 440 A.2d 935 (1981); *Hartford* v. *American Arbitration Assn.,* 174 Conn. 472, 477–78, 391 A.2d 137 (1978). At the trial, it was the plaintiff's burden to prove its entitlement to equitable relief. On appeal, it was the plaintiff's burden to establish so manifest an infringement of its statutory or constitutional rights as to demonstrate an abuse of the trial court's discretion in its denial of the plaintiff's request for a permanent injunction. The plaintiff has failed to do so.

## C

The resolution of the plaintiff's claims with regard to constitutional rights to injunctive relief is largely dispositive of its claimed rights to damages under 42 U.S.C. § 1983. A § 1983 action requires a finding that a person has suffered a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" because of the conduct of a person acting "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory." We are unpersuaded that the plaintiff's claims rise to this level. See *Briscoe* v. *LaHue,* 460 U.S. 325, 329, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983); *Powers* v. *Coe,* 728 F.2d 97, 104–107 (2d Cir. 1984), after remand, *Powers* v. *McGuigan,* 769 F.2d 72 (2d Cir. 1985); *Morrison* v. *Washington County, Alabama,* 700 F.2d 678, 682 (11th Cir. 1983); *Tarkowski* v. *Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206 (7th Cir. 1980).

The specific conduct to which the plaintiff points our attention does not establish a constitutional deprivation. Although the plaintiff now complains that the defendants failed to file a certified inspection report, which it alleges to have been a statutory prerequisite

to an emergency posting, the plaintiff failed to obtain any ruling from the trial court on the significance of this procedural default. The plaintiff would have us draw adverse inferences from delays in the proceedings below, but we lack any factual findings concerning the reasons for delay in bringing this case to trial or for the defendants' extended acquiescence in the temporary injunction obtained by the plaintiff. We note, parenthetically, that such acquiescence can only have been protective of the plaintiff's interests and thus hardly demonstrates improper animus on the part of the defendants. Finally, the continued use of the Lena Building for welfare clients has not been linked in any factual fashion to the challenged conduct of posting the building and is in itself probative of no more than the regrettable substandard living accommodations in which people on welfare are only too often housed. See *Dukes* v. *Durante,* supra. What remains is a question of discriminatory intent, which the trial court found had not been proven.

### III

The plaintiff's fourth claim of error urges us to hold that its property was improperly posted because conditions at the Lena Building are not governed by the provisions of the state building code. The plaintiff relies on two alternate grounds: the exemption of buildings that were lawfully existing on October 1, 1945, under § 120.3 (Rev. to 1971) of the state building code,[15] and

---

[15] Section 120.3 of the Connecticut State Building Code (Rev. to 1971) provides:

"120.3 Existing Buildings or Structures: Upon written request from the owner of an existing building or structure, the building official shall issue a certificate of use and occupancy, provided there are no violations of law or orders of the building official pending, and it is established after inspection and investigation that the alleged use of the building or structure has heretofore existed. Nothing contained herein shall require the removal, alteration or abandonment of, or prevent the continuance of the use and occupancy of, a building lawfully existing on October 1, 1945, except as may be necessary for the safety of life or property."

the exemption of historic structures, under General
Statutes § 29-259.[16] We agree with the trial court's
rejection of these claims of exemption.

With respect to the claim of lawful pre-existing use,
the trial court agreed factually with the plaintiff that

---

[16] General Statutes (Rev. to 1985) § 29-259 was transferred from § 19-395t
in 1983. At the time in question, this statute provided: "Sec. 19-395t. EXEMP-
TION FROM CODE FOR URBAN HOMESTEADING PROPERTY AND HISTORIC
STRUCTURES. (a) The state building inspector and the state building code
standards committee shall revise the state building code to allow exemp-
tions from the state building code for property acquired by an urban
homesteading agency, pursuant to section 8-169r, and transferred to a quali-
fied applicant pursuant to section 8-169s, and for historic structures, as
defined in section 10-321a, which have been classified as such in the state
register of historic places, to encourage participation in urban homestead-
ing programs and the restoration and preservation of historic places; pro-
vided such exemptions shall not affect the safe design, use or construction
of such property.

"(b) Any person, agent of the state, municipality or any other political
subdivision of the state may apply to the state building inspector and the
state building code standards committee to modify or set aside standards
for historic buildings incorporated in the state building code. The state build-
ing inspector shall, within seven days of receipt of any such application,
forward a copy of such application to the director of advocacy for the hand-
icapped and developmentally disabled and to the director of the Connecti-
cut historical commission. Each of said directors shall, within thirty days
of receipt, review such application and make such written recommenda-
tions as he deems appropriate to the state building inspector and the state
building code standards committee concerning the disposition of such appli-
cation. The recommendations of such directors shall be part of the records
and documents of the state building inspector concerning such application.
The state building inspector and the state building code standards com-
mittee shall consider such written recommendations when acting upon such
application and may set aside or modify an individual standard or specifi-
cation when they jointly determine that it would not be feasible or would
unreasonably complicate the construction, alteration or repair in question
and where alternative methods and materials have been proposed to main-
tain certain features. Such determination shall be in writing, shall state
the reasons therefor and if it sets aside any such standard of specification,
a copy of such determination shall be sent to each of said directors.

"(c) Regulations or codes made or amended by authority of this section
shall, after a public hearing called for that purpose by the state building
inspector not less than thirty days before the date of such hearing, be filed
by the state building inspector with the secretary of the state in accord-

the Lena Building pre-dated the adoption of the state building code. The court also agreed that there had been no change of use or alteration to the Lena Building within the provisions of § 106.0 of the state building code.[17] The plaintiff was therefore eligible to invoke the grandfather clause contained in § 120.3.

ance with the provisions of chapter 54 and he shall thereafter make copies available to persons having an interest therein.

"(d) If any regulation made or amended by authority of this section is set aside by a court, such ruling shall affect only the regulation, standard or specification included in the ruling and all other regulations, standards or specifications shall remain in effect."

[17] Section 106.0 of the Connecticut State Building Code (Rev. to 1971) provides: "Section 106.0 Existing Buildings

"Except as provided in this section, existing buildings when altered or repaired as herein specified shall be made to conform to the full requirements of the Basic Code for new buildings:

"106.1 Alterations Exceeding Fifty Percent: If alterations or repairs are made within any period of twelve (12) months, costing in excess of fifty (50) per cent of the physical value of the building; or

"106.2 Damages Exceeding Fifty Per Cent: If the building is damaged by fire or any other cause to an extent in excess of fifty (50) per cent of the physical value of the building before the damage was incurred.

"106.3 Alterations Under Fifty Per Cent: If the cost of alterations or repairs described herein is between twenty-five (25) and fifty (50) per cent of the physical value of the building, the building official shall determine to what degree the portions so altered or repaired shall be made to conform to the requirements for the new buildings:

"106.4 Alterations Under Twenty-five Per Cent: If the cost of alterations or repairs described herein is twenty-five (25) per cent or less of the physical value of the building, the building official shall permit the restoration of the building to its condition previous to damage or deterioration with the same kind of materials as those of which the building was constructed; provided that such construction does not endanger the general safety and public welfare and complies with the provisions of section 928.1 in respect to existing roofs.

"106.5 Increase in Size: If the building is increased in floor area or number of stories, the entire building shall be made to conform with the requirements of the Basic Code in respect to means of egress, fire safety, light and ventilation.

"106.6 Part Change in Use: If a portion of the building is changed in occupancy or to a new use group and that portion is separated from the remainder of the building with the required vertical and horizontal fire divisions complying with the fire grading table 16, then the construction involved

The provisions of § 120.3 protect a lawfully existing building from building code orders that might otherwise "require . . . the alteration . . . or prevent the continuance of the use and occupancy of a building lawfully existing on October 1, 1945, *except* as may be necessary for the safety of life or property." (Emphasis added.) We have, earlier in this opinion, upheld the trial court's finding that the condition of the Lena Building's stairways, ceilings, plumbing, and painting gave indication "that portions of the structure were in danger of collapse." This finding is sufficient to invoke the proviso in § 120.3 concerning "safety of life or property." In the circumstances of this case, there is no exemption under § 120.3.

With respect to the claim arising out of the Lena Building's classification as an historic structure, the trial court acknowledged that the building had been placed on appropriate registers of historic places. The court ruled, however, that such listings did not exempt its owner "from complying with the required building codes, except as the same may be modified by requirements to retain its historic significance."

The legislature, in General Statutes § 29-259, has ordered that the state building code be revised to allow exemptions from the state building code for historic structures, classified as such in the state register of historic places. Nothing in the record indicates that such exemptions have as yet been incorporated into the building code. That lacuna is, however, irrelevant in this case. The statute itself excludes from the exemption anything that would "affect the safe design, use

in the change shall be made to conform to the requirements for the new use and occupancy and the existing portion shall be made to comply with the exitway requirements of the Basic Code.

"106.7 Physical Value: In applying the provisions of this section, the physical value of the building shall be determined by the building official and be based on current replacement costs."

or construction of such property." The trial court's factual findings sufficiently implicate the safe use of the Lena Building to make the exemption inapplicable in the circumstances of this case.

## IV

The plaintiff's final claims of error relate to a number of evidentiary rulings by the trial court. These claims fall into two categories: rulings concerning proof of damages, and rulings concerning the application of the building code to existing buildings.

We need not discuss those evidentiary rulings that relate to proof of damages. Since we have concluded that the plaintiff has failed to prove any violation of its statutory or constitutional rights, the question of damages has become academic.

The remaining claim of error concerns the proffered expert testimony of Leo Belval, who became state building inspector at some time after the disputed posting in this case. He had previously been a local building official in Essex. His testimony was offered with regard to the applicability of the building code to existing buildings. The plaintiff's brief has made review of this claim difficult. In contravention of the requirements of Practice Book § 3060F (d) (3),[18] the brief fails to recite the specific questions that are at issue, the grounds of the objection, the grounds on which the questions were

---

[18] Practice Book § 3060F (d) (3) provides: "Sec. 3060F. APPELLANT'S BRIEF; FORM

"The appellant's brief shall contain the following . . .

"(d) The argument, divided under appropriate headings into as many parts as there are points to be presented, with appropriate references to the statement of facts or to the page or pages of the record or transcript. . . .

"(3) When error is claimed in any other ruling in a court or jury case, the brief or appendix shall include, where appropriate: the pertinent motion or pleading, if it does not appear in the printed record; the question or offer of exhibit; the objection and the ground on which it was based; the ground

claimed to have been admissible, or the basis for the trial court's ruling. In the absence of plain error or of a manifest showing of injustice, we have repeatedly refused to review evidentiary rulings that are so inadequately briefed. *Fogg* v. *Wakelee,* 196 Conn. 287, 288 n.1, 492 A.2d 511 (1985); *Acheson* v. *White,* 195 Conn. 211, 217 n.7, 487 A.2d 197 (1985); *State* v. *Fullwood,* 194 Conn. 573, 582 n.6, 484 A.2d 435 (1984); *State* v. *Vass,* 191 Conn. 604, 621, 469 A.2d 767 (1983). Because the plaintiff's allegations of error challenge only the trial court's exercise of discretion with regard to the admissibility of expert testimony; *McKiernan* v. *Caldor, Inc.,* 183 Conn. 164, 167–68, 438 A.2d 865 (1981); *State* v. *Cosgrove,* 181 Conn. 562, 588, 436 A.2d 33 (1980); enforcement of the Practice Book will cause no injustice and we therefore decline to consider these claims.

There is no error.

In this opinion the other justices concurred.

on which the evidence was claimed to be admissible; the answer, if any; the ruling; and any exception. When the basis of the ruling cannot be understood without a knowledge of the evidence or proceeding which preceded or followed the ruling, a brief narrative or verbatim statement of the evidence or proceeding should be made. A verbatim excerpt from the transcript should not be used if a narrative statement will suffice. When the same ruling is repeated, the brief should contain only a single ruling unless the other rulings are further illustrative of the rule which determined the action of the trial court or establish the materiality or harmfulness of the error claimed. The statement of rulings in the brief shall include appropriate references to the page or pages of the transcript."