******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DERMOTH H. BROWN *v.* CITY OF HARTFORD
(AC 36360)

DiPentima, C. J., and Lavine and Mullins, Js.

*Argued May 18—officially released October 27, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Robaina, J. [motion to disqualify]; Hon.
Richard M. Rittenband, judge trial referee [judgment].)

*S. Zaid Hassan*, for the appellant (plaintiff).

*Jonathan H. Beamon*, senior assistant corporation
counsel, for the appellee (defendant).

*Opinion*

LAVINE, J. This case pits two important legal principles against one another: the right of property owners to notice prior to the taking of their property and the imperative of protecting the public from dangerous conditions posed by decrepit structures. The principal issue in this appeal is whether the defendant, the city of Hartford (city), violated the due process rights of the plaintiff, Dermoth H. Brown, when, without a predeprivation hearing, it demolished certain improvements to his real property that a city building inspector determined were in immediate danger of falling so as to endanger life. The United States Supreme Court has "recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert* v. *Homar*, 520 U.S. 924, 930, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997). Under the circumstances of this case, we conclude that the city's actions were constitutional given the threat of imminent harm to persons posed by the plaintiff's property. We therefore affirm the judgment of the trial court.

The plaintiff appeals from the judgment rendered in favor of the city, following a trial to the court. On appeal, the plaintiff claims that the court improperly (1) concluded that § 9-54 of the Hartford Municipal Code is constitutional, (2) denied his motion to disqualify the city's legal counsel, (3) denied him a jury trial, (4) concluded that his due process rights were not violated, (5) afforded improper deference to certain testimony, and (6) found that he had suffered no pecuniary damages. We disagree.

The following procedural history is relevant to our resolution of the plaintiff's claims. The plaintiff, acting on his own behalf, commenced the present action in May, 2011, and through counsel filed an eight count, second amended complaint on February 28, 2013.[1] The plaintiff alleged that on May 22, 2009, without giving him actual or constructive notice, the city entered property he owned at 3372-3374 Main Street and 3364-3366 Main Street (collectively, premises) in Hartford and demolished porches and a stairway that were appurtenant to the main structures.[2] He also alleged that he operated businesses from the premises and that the demolition rendered the premises unusable. He further alleged that the demolition violated § 9-52 (a) of the Hartford Municipal Code (city code), which required that the city notify him of the dangerous condition on his property prior to demolition, and, therefore, he was denied his right to due process. Moreover, the plaintiff alleged that the premises were not in a dangerous or unsafe condition and that as a result of the demolition, he suffered pecuniary damages.

The court, *Hon. Richard M. Rittenband,* judge trial referee, tried the case on five days in June and July, 2013. The parties agreed that the court should bifurcate the claims alleged in the second amended complaint by determining first whether § 9-54 of the city code was constitutional before adjudicating the plaintiff's other claims. In a memorandum of decision issued on August 16, 2013, the court concluded that § 9-54 was constitutional and, consequently, rendered judgment in favor of the city on count eight. The parties then submitted posttrial briefs. The court rendered judgment in favor of the city on the remaining counts in a memorandum of decision issued on November 12, 2013. The plaintiff appealed to this court.

The court made the following findings of fact and conclusions of law in its memorandum of decision. On May 22, 2009, the plaintiff was the owner of 3364-3366 Main Street (3364-3366) and 3372-3374 Main Street (3372-3374). The court found that the first floor of 3364-3366 contained an office for a liquor import business owned by the plaintiff, while the second and third floors each housed an unoccupied residential tenement. The first floor of 3372-3374 contained a florist shop owned and operated by the plaintiff, the second floor housed a hairdresser, and the third floor a residential tenement.

At approximately 10 a.m. on the day in question, Adrien Shepard, a field supervisor for Connecticut Natural Gas went to the premises and observed that gas service was "going from one building to another." Martin Jones, a lieutenant in the Hartford Fire Department who conducts investigations for city code enforcement, was called to the premises. Jones observed that gas and electric services were "going from one building to another." He took numerous photographs of the premises that were admitted into evidence.

Michael Gompper, a city assistant building inspector licensed by the state, inspected the premises on May 22, 2009.[3] Prior to joining the city building department in June, 2008, he had been a building inspector in Vernon for twenty-eight years. He had never previously been to the premises and was directed to go there by his supervisor. When he arrived at the premises, he found them in a dilapidated condition. He walked on the rear porch of 3364-3366 and 3372-3374 and noticed vibrations in the floorboards, guardrails, posts, and stair treads. The roof posts were spongy and not straight. Gompper felt nervous about walking on the back stairs as the stairway and railings were rotted. The roof on the back porch had collapsed and the porch floorboards went down when he walked on them. Gompper did not walk on the front porch of 3364-3366 because he believed that it was too dangerous to do so. On the basis of their testimony, the court found that Gompper and Jones had experience inspecting properties, including buildings that had to be demolished. They observed

rotted columns and other parts of the porches and the stairway that made them unsafe. The court concluded that the city had demolished the porches and stairway in good faith and that those structures were *unsafe for human use.*

The plaintiff claimed that the premises were safe. Although the court found the plaintiff to be credible as to how "he saw things," the plaintiff's view of the facts did not conform to "the reality of the facts." The court also found that the plaintiff failed to prove that he had suffered any damages as a result of the demolition. The plaintiff had failed to prove the value of the porches and stairway or the value of the premises before and after the demolition. The plaintiff also failed to sustain his burden as to the loss of income via rental of the premises, the construction of new porches, or the loss of income from the florist business. The court, therefore, found in favor of the city on the counts alleging negligence and nuisance. See footnote 1 of this opinion.

The court also found in favor of the city on the plaintiff's 42 U.S.C. § 1983 due process claims.[4] The court found that the circumstances at the premises were determined to be unsafe and to present a danger to human life pursuant to Gompper's observations and discretion. Section 9-54 of the city code and § 116.4 of the State Building Code granted Gompper such authority, and, therefore, his decision did not constitute a city policy constituting a due process violation pursuant to *Monell* v. *New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). See footnotes 4, 6 and 7 of this opinion. The court stated that in emergency circumstances it is not necessary for government to hold a predeprivation hearing, but that the property owner is entitled to a postdeprivation hearing.[5] The court concluded that the present action provided the plaintiff the requisite postdeprivation hearing. See *Danziger* v. *Demolition Board*, 18 Conn. App. 40, 46, 556 A.2d 625 (person claiming harm under municipal order may seek redress by commencing plenary action), cert. denied, 211 Conn. 805, 559 A.2d 1139 (1989). The court also concluded that the plaintiff suffered no pecuniary loss as a consequence of the demolition. Additional facts will be included as necessary.

We now turn to the plaintiff's claims on appeal.

## I

The plaintiff first claims that the court improperly concluded that § 9-54 of the city code is constitutional.[6] The plaintiff claims that § 9-54 and the city code are unconstitutional because they do not provide for a postdeprivation hearing or other avenue to challenge the demolition of his property. We disagree.

The standard of review of a challenge to the constitutionality of a legislative enactment is well-known. "[A] party attacking the constitutionality of a validly enacted

[ordinance] bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt. . . . We will indulge in every presumption in favor of the [ordinance's] constitutionality . . . and, when called upon to interpret [an ordinance], we will search for an effective and constitutional construction that reasonably accords with the [town council's] underlying intent." (Citations omitted; internal quotation marks omitted.) *Ramos* v. *Vernon*, 254 Conn. 799, 814, 761 A.2d 705 (2000). "[I]n passing upon the constitutionality of a legislative act, we will make every presumption and intendment in favor of its validity . . . ." (Internal quotation marks omitted.) *Bottone* v. *Westport*, 209 Conn. 652, 657, 553 A.2d 576 (1989).

"[A] plaintiff claiming due process protection under the Fourteenth Amendment must possess a property or liberty interest that is somehow jeopardized by governmental action, necessitating a pre- *or* post-deprivation hearing as a safeguard." (Emphasis added; internal quotation marks omitted.) *Hunt* v. *Prior*, 236 Conn. 421, 436, 673 A.2d 514 (1996).

In count eight of the second amended complaint, the plaintiff sought a declaratory judgment that § 9-54 of the city code and § 116.4 of the State Building Code (state code)[7] were unconstitutional under the federal constitution as applied to the states through the due process clause of the fourteenth amendment.[8] In ruling on the constitutionality of § 9-54 of the city code, the court found that the ordinance "bestows emergency powers to the city director of licenses and inspections to 'order such structure or part thereof to be torn down . . . to render the structure safe until the proper proceedings can be taken as provided' " in § 9-51 of the city code. Section 116.4 of the state code was adopted by the city pursuant to General Statutes § 29-253. Section 116.4 of the state code provides that when an unsafe condition exists, the building official may employ the labor necessary to render the premises safe "*up to and including demolition.*" (Emphasis added.)

The court found that Gompper and Jones concluded that the porches and stairway were unsafe for human use. The court concluded, given the dangerous condition of the premises and Gompper's concern for human safety, that it was proper for the city to demolish the porches and stairway at the premises without holding a predeprivation hearing. In reaching its conclusion, the court recognized that due process is not fixed in form but noted its root requirement "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, *except for extraordinary situations* where some valid governmental interest is at stake that justifies postponing the hearing until after the event." (Emphasis altered; footnote omitted.) *Boddie* v. *Connecticut*, 401 U.S. 371, 379, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971). The United States

Supreme Court has stated that "the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking can satisfy the requirements of procedural due process." *Parratt* v. *Taylor*, supra, 451 U.S. 539.

The court in the present case found that efforts were made to notify the plaintiff of the impending demolition, but he could not be reached even at the telephone number "listed" on the property itself. The court found that due to safety concerns, it was proper for the city to proceed with the demolition and that it was impractical to provide any meaningful predeprivation process to the plaintiff, but there was available a meaningful means by which to assess the propriety of the city's action at some time after the initial taking. In reaching its conclusion, the court relied on *Danziger* v. *Demolition Board*, supra, 18 Conn. App. 40, which held that a postdeprivation hearing meets the constitutional requirements of due process. "It is not constitutionally necessary that a statute authorizing a local administrative board to make orders contain a provision for an appeal, in the technical sense, from the board's action. If any person claims to be harmed by such an order, his constitutional right to due process is protected by the privilege to apply to a court. . . . This means that in such a case the aggrieved person may bring a plenary action, rather than an administrative appeal, against the appropriate officials or municipality in order to obtain judicial review of their actions." (Citation omitted; internal quotation marks omitted.) Id., 46. The court concluded that the present action provided the plaintiff with a postdeprivation hearing.

On appeal, the plaintiff claims that the court improperly relied on *Danziger* because it is factually distinguishable. We disagree that the due process principle for which *Danziger* stands does not apply to the present case, but we recognize that *Danziger* is distinguishable on its procedural posture. *Danziger* concerned an impermissible administrative appeal from the Stamford Demolition Board, which had ordered the plaintiff's property demolished on health and safety grounds. Id., 41–42. This court held that although there was no statutory basis for the *Danziger* plaintiff to appeal from the municipal board, the plaintiff was not prohibited from bringing a plenary action, rather than an administrative appeal. Id., 46. The plaintiff in the present case was not prohibited from bringing an action against the city. We, therefore, cannot conclude that the court improperly relied on *Danziger*.

Moreover, *Danziger* is not the only case in our jurisprudence holding that in emergent circumstances a municipal building inspector may in his or her discre-

tion declare premises unsafe for human occupancy without prior notice and a hearing. In *Gorra Realty, Inc.* v. *Jetmore*, 200 Conn. 151, 510 A.2d 440 (1986), the plaintiff commenced an action against the New London building inspector who, pursuant to the state building code, had declared the interior stairs and ceilings of an apartment building owned by the plaintiff to be in danger of collapse and posted a notice that the premises were unsafe for residential occupancy. Id., 152. On appeal to our Supreme Court, the plaintiff claimed that "even under the emergency provisions of . . . the state building code, it had a due process right to prior notice, hearing and an opportunity to respond to claimed violations, in advance of the posting of its property." Id., 162. Our Supreme Court disagreed, holding that the due process claim foundered "on the well established constitutional principle permitting summary administrative action in situations of emergency"; id.; and that the plaintiff's due process rights were protected by its access to judicial relief. Id.

In his appellate brief, the plaintiff in the present case has directed our attention to *Catanzaro* v. *Weiden*, 188 F.3d 56 (2d Cir. 1999), which provides a useful analysis of due process considerations raised by municipal ordinances that provide for the demolition of property under emergent circumstances.[9] In its analysis, the United States Court of Appeals for the Second Circuit relied on the United States Supreme Court case of *Hodel* v. *Virginia Surface Mining & Reclamation Assn.*, 452 U.S. 264, 101 S. Ct. 2352, 69 L. Ed. 2d 1 (1981), in which the Supreme Court considered "the constitutionality of an emergency procedure which allowed the Secretary of the Interior, acting through government inspectors, to order the immediate cessation of mining activities when an inspector perceived an immediate danger to public safety. The Court held that [t]he relevant inquiry is not whether a cessation order should have been issued in a particular case, but whether the statutory procedure itself is incapable of affording due process." (Internal quotation marks omitted.) *Catanzaro* v. *Weiden*, supra, 188 F.3d 62.

In upholding the constitutionality of the inspection procedures, the Supreme Court stated that "the procedure afforded the inspectors discretion to determine whether or not there was an emergency, and that this discretion, even coupled with the inherent possibility of its misapplication, did not offend due process: [t]he possibility of administrative effort inheres in any regulatory program; statutory programs authorizing emergency administrative action prior to a hearing are no exception. . . .

"Discretion of any official may be abused. Yet it is not a requirement of due process that there be judicial inquiry before discretion can be exercised. It is sufficient, where only property rights are concerned, that

there is at some state an opportunity for a hearing and a judicial determination. . . .

"[T]his discretion is not absolute, and . . . if a pattern of abuse and arbitrary action were discernible from review of an agency's administration of a summary procedure the application of the procedure may be unconstitutional." (Citations omitted; internal quotation marks omitted.) Id.

Moreover, *Hodel* directs that a municipality's decision that a structure constitutes a danger to the public is to be accorded "some deference, and not to engage in a hindsight analysis of whether the damage to the buildings actually created an immediate danger to the public. Under *Hodel*, the due process guarantee is offended only when a emergency procedure is invoked in an abusive and arbitrary manner; therefore, there is no constitutional violation unless the decision to invoke the emergency procedure amounts to an abuse of the constitutionally afforded discretion." Id.

*Hodel* does not suggest that "government may simply avoid affording due process to citizens by arbitrarily invoking emergency procedures . . . [it] clearly declares such actions unconstitutional. However, where there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical, the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." Id., 63.

The Second Circuit Court of Appeals reasoned that *Hodel's* deferential standard "finds strong support in policy considerations. The law should not discourage officials from taking prompt action to insure the public safety. By subjecting a decision to invoke an emergency procedure to an exacting hindsight analysis, where every mistake, even if made in good faith, becomes a constitutional violation, we encourage delay and thereby potentially increase the public's exposure to dangerous conditions. This quandary is exactly what these emergency procedures are designed to prevent, and is the primary reason they are constitutionally acceptable.

"If an official believes that the public is in immediate danger, he or she should not hesitate to invoke an emergency procedure for fear of being sued, and being liable for damages should his or her decision turn out to be incorrect in hindsight." Id., 63.

On the basis of our review of the record, which contains competent evidence by which the court could conclude that an emergency existed, and the applicable law; see, e.g., *Parratt* v. *Taylor*, supra, 451 U.S. 527, and its progeny; we conclude that the trial court properly determined that § 9-54 of the city code is not unconstitu-

tional because it does not contain an appeal provision. As the court found in this case, which concerns property rights, the plaintiff was afforded postdeprivation due process by means of the present action. The court, therefore, properly rendered judgment in favor of the city on count eight.

## II

The plaintiff next claims that it was improper for the court to deny his motion to disqualify the city's office of corporation counsel given an imputed conflict of interest. We disagree.

The following facts are relevant to this claim. Prior to commencing the present action, the plaintiff had been represented by Attorney Saundra Kee Borges. Borges, in fact, had written letters on his behalf in an effort to settle the plaintiff's claim against the city. In July, 2010, Borges was appointed to the position of city corporation counsel. In May, 2011, the plaintiff commenced the present action as a self-represented party. One month later, Attorney Jonathan Hayes Beamon, senior assistant corporation counsel, filed an appearance on behalf of the city. The city filed its answer and special defenses on December 20, 2011.

On December 21, 2011, the plaintiff filed a motion to disqualify the city's office of corporation counsel on the ground that Borges had represented him with respect to his claim against the city prior to being appointed corporation counsel, and Borges' disqualification was imputed to the office of corporation counsel. The plaintiff did not request oral argument or a hearing on his motion to disqualify. The city objected to the motion to disqualify and attached an affidavit from Borges.[10] The court, *Robaina, J.*, sustained the defendant's objection to the motion to disqualify. On March 14, 2012, the plaintiff filed a motion for articulation, asking Judge Robaina to state the basis of his ruling sustaining the city's objection to the motion to disqualify. On September 30, 2014, Judge Robaina issued an order on the motion for articulation stating "NO ACTION NECESSARY appeal pending." The plaintiff did not file a motion for review. See Practice Book §§ 66-5 and 66-7.[11]

On appeal, the plaintiff claims that Borges' disqualification as his prior counsel should have been imputed to all of the lawyers in the city's office of corporation counsel pursuant to rule 1.9 of the Rules of Professional Conduct. In his brief, the plaintiff cites numerous cases pertaining to the disqualification of a private law firm when one of its lawyers previously had represented a client. We disagree with the plaintiff's position because rule 1.11 is the governing Rule of Professional Conduct.

"The standard of review for determining whether the court properly denied a motion to disqualify counsel is an abuse of discretion standard. The Superior Court has inherent and statutory authority to regulate the

conduct of attorneys who are officers of the court. . . . In its execution of this duty, the Superior Court has broad discretionary power to determine whether an attorney should be disqualified for an alleged breach of confidentiality or conflict of interest. . . . In determining whether the Superior Court has abused its discretion in denying a motion to disqualify, this court must accord every reasonable presumption in favor of its decision. Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Smigelski* v. *Kosiorek*, 138 Conn. App. 728, 739–40, 54 A.3d 584 (2012), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013).

The plaintiff claims that rule 1.9 of the Rules of Professional Conduct controls this claim. Rule 1.9 (a) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Rule 1.10 of the Rules of Professional Conduct concerns the "Imputation of Conflicts of Interest: General Rule." Rule 1.10 provides in relevant part: "(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9 . . . . (d) The disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11."

Rule 1.11 (d) of the Rules of Professional Conduct provides in relevant part: "Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee: (1) Is subject to Rules 1.7 and 1.9; and (2) Shall not: (i) Participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless the appropriate government agency gives its informed consent, confirmed in writing . . . ."

The commentary to rule 1.11 of the Rules of Professional Conduct states that "subsection (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers." Rule 1.11 represents a balancing of interests. "The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards. . . . The limitation of disqualification in subsections . . . (d) (2) to matters involving a specific party or parties, rather than extending disqualification to all substantive issues on which the lawyer worked, serves a similar function." Rules of Professional Conduct 1.11, commentary.

In the present case, Borges attested that she represented the plaintiff with respect to the demolition of the premises in 2009. She became corporation counsel in July, 2010, and the plaintiff commenced the present litigation in May, 2011. Borges also attested that she had not participated in the present litigation being defended by the office of corporation counsel and that she has not divulged confidences of the plaintiff. Beamon represented the city throughout the litigation. Pursuant to rules 1.10 (d) and 1.11 (d) of the Rules of Professional Conduct, under the circumstances of this case, Borges' disqualification as the plaintiff's prior counsel need not be imputed to Beamon. The plaintiff provided no evidence to Judge Robaina to contradict Borges' affidavit. We, therefore, conclude that the court did not abuse its discretion by denying the plaintiff's motion to disqualify.

### III

The plaintiff next claims that the court improperly denied his claim for a jury trial after he filed an amended complaint that alleged new facts, a new claim, and a new time line. He asks this court to reverse the judgment and to remand the case for a jury trial. We decline the plaintiff's request as he waived his right to a jury trial.

The following procedural history is relevant to this claim. The plaintiff commenced this action in May, 2011, amended his complaint in September, 2011, and filed a certificate of closed pleadings and a claim for the trial list on March 8, 2012. On February 28, 2013, the plaintiff filed a request to amend his complaint along with a second amended complaint. The city filed its answer and special defense on April 5, 2013. On April 12, 2013, the plaintiff filed a claim for a jury trial. The parties appeared before Judge Rittenband on June 25, 2013, to begin what the court understood to be a trial to the court.

The city's assistant corporation counsel addressed the court stating that the case had been on the trial list until the plaintiff recently filed an amended complaint and jury trial claim. The plaintiff's counsel stated that the plaintiff had not filed a claim for a jury trial with respect to his § 1983 claims in 2012, but his second amended complaint alleged an equal protection class of one claim that raised new questions of fact. He argued that, pursuant to General Statutes § 52-215, the plaintiff was entitled to file a jury claim within ten days of the factual issues being joined. He also argued that the city had not filed a motion to strike the jury claim. The city's counsel responded that the case had never been moved from the court trial list to the jury docket and that it was his understanding, given the trial management schedule, that the case was to be tried to the court.

Judge Rittenband stated that § 52-215 provides that when the issue is joined, or the pleadings are closed,

a jury claim must be filed within ten days; the issue in the present case was joined; and the plaintiff could not revive a dispute by filing an amended complaint. Judge Rittenband denied the plaintiff's request for a jury trial, stating that the case had been set down for a court trial. Judge Robaina[12] had instructed Judge Rittenband that if Judge Rittenband denied the request for a jury trial, evidence was to begin that day. Moreover, speaking to the plaintiff's counsel, Judge Rittenband stated "if you don't agree with that, and you want a postponement, then you have to see Judge Robaina. That's up to you, or we can start evidence now."[13] Without interruption and without seeing Judge Robaina, the plaintiff's counsel commenced to present evidence by calling the plaintiff to testify.

Section 52-215 provides in relevant part: "When . . . an issue of fact is joined, the case *may*, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party . . . ." (Emphasis added.) Therefore, "[w]hen an amended complaint raises a new issue of fact, a new ten day period arises within which to claim the matter to the jury." *Flint* v. *National Railroad Passenger Corp.*, 37 Conn. App. 162, 164–65, 655 A.2d 266 (1995), aff'd, 238 Conn. 282, 679 A.2d 352 (1996).

On appeal, the plaintiff claims that the court should have permitted the case to be tried to a jury because the second amended complaint enlarged the factual issues to be tried.[14] Although we agree that count seven of the second amended complaint alleged facts beyond those alleged in the plaintiff's 42 U.S.C. § 1983 due process claims, we conclude that the plaintiff waived his right to a jury trial.

This court addressed the issue of waiver of the right to a jury trial quite recently in the case of *Delahunty* v. *Targonski*, 158 Conn. App. 741,      A.3d      (2015). "Waiver is the intentional relinquishment or abandonment of a known right or privilege." (Internal quotation marks omitted.) *MSO, LLC* v. *DeSimone*, 313 Conn. 54, 64, 94 A.3d 1189 (2014).

"[W]*aiver may be effected by action of counsel. . . .* When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. . . . Thus, [w]aiver . . . involves the idea of assent, and assent is an act of understanding. . . .

"It is well established that implied waiver . . . arises from an *inference* that [a party] knowingly and voluntarily relinquished the right in question. . . . Waiver does not have to be express . . . but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so. . . . It also is well established than any such inference must be based on

a course of conduct." (Emphasis in original; internal quotation marks omitted.) *Delahunty* v. *Targonski*, supra, 158 Conn. App. 748; see also *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 58, 970 A.2d 656, cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Co.*, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 (2009).

"A party may forfeit the right to a jury trial in a civil case if the right is not asserted in a timely manner, may abandon the right to a jury trial if he or she chooses a forum that does not afford the right to a jury trial, or may waive the right to a jury trial." *Delahunty* v. *Targonski*, supra, 158 Conn. App. 749; see also *L & R Realty* v. *Connecticut National Bank*, 246 Conn. 1, 14, 715 A.2d 748 (1998) (distinguishing standards of waiver in criminal and civil proceedings).

Given the circumstances in the present case, we conclude that the plaintiff, through counsel, waived his right to a jury trial when counsel declined Judge Rittenband's invitation to consult Judge Robaina, acquiesced in Judge Rittenband's proposal that he commence evidence that day and schedule his remaining witnesses for the following week, failed to object to trying the case before Judge Rittenband the day the case was called for trial, and called the plaintiff to testify on his own behalf. The plaintiff, therefore, by implication, waived his right to a jury trial.

IV

The plaintiff's fourth claim is that the court erred by concluding that his right to due process was not violated by the city's failure to provide notice and a hearing before it demolished the porches and stairway at the premises and that the present action met due process requirements by providing a postdeprivation hearing. We disagree.

On appeal, the plaintiff argues that his right to notice and a predeprivation hearing should be determined pursuant to the test established in *Mathews* v. *Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." Id., 332. Under *Mathews*, a reviewing court "applies a three part test that requires consideration of the private interest that will be affected by the official action, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards . . . and . . . the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (Internal quotation marks omitted.) *Greater New Haven Property*

*Owners Assn.* v. *New Haven*, 288 Conn. 181, 198, 951 A.2d 551 (2008).

The *Mathews* balancing test that the plaintiff asks us to utilize in the present case essentially was used by the United States Supreme Court in *Parrat* v. *Taylor*, supra, 451 U.S. 527, *Hodel* v. *Virginia Surface Mining & Reclamation Assn.*, supra, 452 U.S. 299–301, and other progeny. See part I of this opinion. There is a "well established constitutional principle permitting summary administrative action in situations of emergency." *Gorra Realty, Inc.* v. *Jetmore*, supra, 200 Conn. 162, citing *Hodel* v. *Virginia Surface Mining & Reclamation Assn.*, supra, 299–301. "It is by now well established that due process, unlike some legal rules, is not a technical concept with a fixed content unrelated to time, place and circumstances. . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands. . . . This Court has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause. . . . Indeed in *Parratt* . . . we specifically noted we have rejected the proposition that [due process] *always* requires the State to provide a hearing prior to the initial deprivation of property." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Gilbert* v. *Homar*, supra, 520 U.S 929.

As our Supreme Court stated in *Gorra*, when an emergency exists and it is impractical to provide notice and a predeprivation hearing, none is required.[15] We, therefore, decline to undertake a *Mathews* analysis in the present case, as we are constrained to follow the precedent of the United States Supreme Court and our own Supreme Court.

V

The plaintiff next claims that the court failed to give the proper deference to the testimony of certain witnesses. Specifically, the plaintiff claims that the court (1) failed to defer to the testimony of Edward Perez, who was mayor of the city at the time of the demolition, but (2) gave deference to the testimony of lay witnesses that was akin to expert testimony. The plaintiff, therefore, implies that the court's finding that the porches and stairway were unsafe for human use was clearly erroneous. We disagree that the court's finding was clearly erroneous.

"To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Internal quotation marks omitted.) *Beeman* v. *Stratford*, 157 Conn. App. 528, 533,      A.3d      (2015). As the finder of fact, the court is responsible for weighing the evidence. "It is the [fact finder's] right to accept some, none or all of

the evidence presented. . . . Moreover, [e]vidence is not insufficient . . . because it is conflicting or inconsistent. [The court] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [finder of fact's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Marcisz*, 99 Conn. App. 31, 36, 913 A.2d 436, cert. denied, 281 Conn. 922, 918 A.2d 273 (2007).

## A

The plaintiff claims that the court failed to give deference to the testimony of Perez, who was the mayor of Hartford in May, 2009. Specifically, the plaintiff claims that because Perez was the mayor of the city at the time of the demolition, he was familiar with the procedures the city used when demolishing property and that the court should have construed his testimony that the plaintiff's right to due process had been violated as a judicial admission against the city. We disagree with the argument that Perez' testimony constituted a judicial admission and that the court was required to accept his testimony.

The court found that Perez was a credible witness but that he had no knowledge of the condition of the porches and stairway on the day Gompper inspected the premises. Perez, instead, opined that the city violated the plaintiff's right to due process by moving too fast to demolish the porches and stairway. Perez believed that the city should have entered into negotiations with the plaintiff before the demolition occurred. But see footnote 15 of this opinion.

"A judicial admission dispenses with the production of evidence by the opposing party as to the *fact* admitted, and is conclusive upon the party making it." (Emphasis added; internal quotation marks omitted.) *Birchard* v. *New Britain*, 103 Conn. App. 79, 85, 927 A.2d 985, cert. denied, 284 Conn. 920, 933 A.2d 721 (2007). "Judicial admissions are voluntary and knowing concessions of fact *by a party* or a party's attorney occurring during judicial proceedings. . . . They excuse the other party from the necessity of presenting evidence on the fact admitted and are conclusive on the party making them. . . . Whether a party's statement is a judicial admission or an evidentiary admission is a factual determination to be made by the trial court. . . . The distinction between judicial admissions and mere evidentiary admissions is a significant one that should not be blurred by imprecise usage. . . . While both types are admissible, their legal effect is markedly different; judicial admissions are conclusive on the trier of fact, whereas evidentiary admissions are only evidence to be accepted or rejected by the trier . . . .

"In contrast with a judicial admission, which prohib-

its any further dispute of a party's factual allegation contained in its pleadings on which the case is tried, [a]n evidential admission is subject to explanation by the party making it so that the trier may properly evaluate it. . . . Thus, an evidential admission, while relevant as proof of the matter stated . . . [is] not conclusive. . . . Because the probative value of an admission depends on the surrounding circumstances, it raises a question for the trier of fact. . . . The trier of fact is free to give as much weight to such an admission as, in the trier's judgment, it merits, and need not believe the arguments made regarding the statement by one side or the other." (Citations omitted; emphasis added; internal quotation marks omitted.) *O & G Industries, Inc.* v. *All Phase Enterprises, Inc.*, 112 Conn. App. 511, 523 n.5, 963 A.2d 676 (2009).

Perez is not a party to this action. Moreover, whether the city violated the plaintiff's right to due process by demolishing the porches and stairway without giving him notice and a predeprivation hearing is a question of law to be decided by the court. See *Beeman* v. *Stratford*, supra, 157 Conn. App. 534 (whether proper notice given is question of law). In any event, the court was not bound to accept Perez' testimony. The court found that Perez did not see the condition of the porches and stairway on May 22, 2009, and, therefore, he was in no position to determine whether the structures were unsafe for human use. There also is no evidence in the record that Perez is a licensed building inspector capable of determining whether the porches and stairway were safe for human use. For the foregoing reasons, we conclude that the court did not err by failing to give preclusive effect to Perez' testimony.

B

The plaintiff also claims that the court improperly considered the testimony of Gompper and Jones because they had not been disclosed as expert witnesses. We disagree that they testified as expert witnesses.

When the court found that the porches and stairway at the premises were unsafe for human use, it stated that it was more impressed with the testimony of Gompper and Jones, who pointed out the rotted columns and other parts of the porches and stairway that made them unsafe. Gompper testified to the sensory observations he made while he was walking on the porches and stairway, including that the floorboards of the porches, the guardrails, posts, and stair treads vibrated when he stepped on them. He also testified that the posts were not straight. Gompper used photographic evidence to point out that the stairway was rotted, and that the floorboards of the porches, which were covered in plywood, gave way "more than a little bit." Gompper observed that the second floor porch at 3372-3374 was demolished because it was supported by the first floor

porch and was in similar condition to the first floor porch. Gompper did not walk on the front porch of 3364-3366 because he believed that it was too dangerous. Gompper had inspected porches for demolition in the past.

Jones had seen many buildings that were in "insufficient shape so they had to be demolished." Although Jones' observations may have been made after a fire, he nonetheless had made frequent observations of porches and other parts of buildings.

The court stated that it had given preference to the observations of witnesses who had experience in inspecting properties. Although Gompper and Jones had not been disclosed as experts, their observations were sufficiently accurate to allow the court, on the basis of their factual observations, to conclude that the city demolished the porches and stairway because it had a good faith belief that the structures were unsafe for human use.

On the basis of our review of the record, including the photographs of the porches and stairway in evidence, we conclude that the court did not abuse its discretion by permitting Gompper and Jones, who were building inspectors, to testify as to their observations of the premises. Section 116.4 of the state code specifically empowers a building inspector to demolish property that in his sole opinion is in immediate danger of falling so as to endanger life or property. Moreover, pursuant to *Hodel*, it is not the role of the court to engage in a hindsight analysis of the condition of the porches and stairway to determine whether they actually created an immediate danger to the public. See *Hodel* v. *Virginia Surface Mining & Reclamation Assn.*, supra, 452 U.S. 302–303. We conclude, therefore, that the court's finding that the porches and stairway were unsafe for human use was not clearly erroneous.

VI

The plaintiff's final claim is that the court's finding that he failed to prove pecuniary damages was clearly erroneous. We do not agree.

In its memorandum of decision, the court concluded that there was no credible evidence before it as to the value of the porches and stairway or the premises before demolition and after demolition. Also, the plaintiff failed to sustain his burden of proof as to the loss of income via rental of the premises, the cost of constructing new porches and a stairway, or the loss of business income from the florist business. The plaintiff offered an estimate of the cost of new porches prepared by a contractor who did not testify. The estimated cost of the new porches was $99,000, which the court found was not far from the present value of the premises. Moreover, the plaintiff was entitled to the cost of the porches and stairway that were demolished, not new

porches.

"[W]e review [a] trial court's damages award under the clearly erroneous standard, under which we overturn a finding of fact when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 225, 990 A.2d 326 (2010).

The essence of the plaintiff's claim is that the court did not find his testimony or the testimony of his witnesses credible. He acknowledges, however, that "the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible." (Internal quotation marks omitted.) *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 65, 931 A.2d 237 (2007). Specifically, the plaintiff claims that the court should have credited the uncontradicted testimony of his expert witness, Christopher Zajda, a structural engineer.

With respect to Zajada's testimony, the court found that he never saw the premises until 2012, three years after the demolition had taken place. Zajada testified that the porches should not have been demolished because the top of the porches where they were attached to the building were structurally sound. The court found this testimony problematic because it did not focus on the safety of the floors of the porches and the columns holding them up. It is well-known that the finder of fact may believe some, none, or all of an expert's testimony. See *Silva* v. *Walgreen Co.*, 120 Conn. App. 544, 557–58, 992 A.2d 1190 (2010). Following our review of the record and the court's memorandum of decision, we are not left with a firm conviction that a mistake has been made.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The first two counts of the second amended complaint sound in statutory negligence pursuant to General Statutes § 52-557n (a) and (b) (8), respectively. Count three alleged nuisance pursuant to General Statutes § 52-557n (a) (1) (C); counts four, five, and six alleged claims pursuant to 42 U.S.C. § 1983 for procedural due process, substantive due process, and loss of property violations, respectively; count seven alleged a class of one equal protection violation; and count eight sought a declaratory judgment that § 9-54 of the Hartford Municipal Code and § 116.4 of the State Building Code are unconstitutional.

The city denied the material allegations of the operative complaint and alleged two special defenses: as to the negligence alleged in counts one and two, the plaintiff's injuries were proximately caused by his own negligence; and as to counts one through three, the claims were barred by governmental immunity pursuant to General Statutes § 52-557n.

[2] The plaintiff alleged that he resides in Manchester, not at the premises.

[3] The city did not disclose Gompper as an expert witness. The court permitted him to testify only as to his observations of the premises.

[4] Title 42 of the United States Code, § 1983, provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

The plaintiff alleged, pursuant to *Monell* v. *New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), that his rights to due process were violated. In *Monell*, "the United States Supreme Court . . . held that [l]ocal governing bodies . . . can be sued directly under [42 U.S.C.] § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. [I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible under § 1983." (Internal quotation marks omitted.) *Pane* v. *Danbury*, 267 Conn. 669, 681–82, 841 A.2d 684 (2004).

[5] The court cited *Parratt* v. *Taylor*, 451 U.S. 527, 539, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981) (necessity of quick state action coupled with meaningful postdeprivation means to assess propriety of state action satisfies requirements of procedural due process), overruled in part on other grounds by *Daniel* v. *Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).

[6] Section 9-54 of the Hartford Municipal Code provides in relevant part: "If, in the opinion of the Director of Licenses and Inspections, there *exists actual and immediate danger of the failing of any structure or part thereof, so as to endanger life or property, he shall order such structure or part thereof to be torn down* or shall cause the work to be done which is necessary to render the structure temporarily safe until the proper proceedings can be taken as provided in section 9-51. He may in such cases and in any case where any building or part thereof has fallen and life is endangered by the occupation thereof, order the inmates and occupants of such building or part thereof to vacate forthwith. . . ." (Emphasis added.)

[7] Section 116.4 of the State Building Code provides: "Emergency work. When imminent danger or an unsafe condition requiring immediate action exists and the owner of the building or structure cannot be located, or refuses or is unable to expeditiously render the premises safe, the building official shall order the employment of the necessary labor and materials to perform the required work as expeditiously as possible. Such work shall include that required, in the building official's sole opinion, to make the premises temporarily safe, up to and including demolition."

[8] Although the plaintiff alleged in his complaint that § 116.4 of the state code is unconstitutional, he has not challenged the trial court's determination that that section of the state code is constitutional.

[9] The factual circumstances of *Catanzaro* are somewhat analogous to the circumstances in this case as the conditions of the premises were brought to the attention of the cities by third parties. In that case, an automobile was accidentally driven into the front of a multistory building and severely compromised the front wall of the building, which could have fallen into the street. *Catanzaro* v. *Weiden*, supra, 188 F.3d 58. The city officials determined that for public safety, the building had to be demolished. Id. Although the owner of the premises was called to the scene, there was disagreement as to whether he acquiesced in the demolition. Id. Subsequently, the owner brought an action alleging violations of 42 U.S.C. § 1983, claiming a violation of his right to due process; id., 61; that the building was not in danger of falling, and that the city had an ulterior motive to demolish the building. Id., 59. The owner claimed that he should have been provided a predemolition hearing to demonstrate that the building was not in danger of falling. The District Court granted the city's motion for summary judgment, which was affirmed by the United States Court of Appeals for the Second Circuit, which identified the question as "whether the *Parratt* exception applies, and is thus whether there was an emergency and whether adequate postdeprevation remedies were available." Id., 62.

[10] In the affidavit, Borges attested that as a private attorney she had represented the plaintiff with regard to the demolition of the premises starting in 2009, she did not commence any legal action on behalf of the plaintiff with respect to the premises, she has not represented the plaintiff since 2009, she became corporation counsel in July, 2010, since becoming corporation counsel, she has taken no role in the present litigation commenced by the plaintiff in May, 2011, and she has not discussed any confidences the plaintiff gave to her regarding the premises.

[11] In his appellate brief, the plaintiff claims that he raised the issue of disqualifying the corporation counsel's office during trial. He did not, how-

ever, identify where in the record or transcript we could find the incident to which he refers. We therefore decline to review any claim related thereto.

[12] At the time of trial, Judge Robaina was the presiding judge for civil matters in the judicial district of Hartford.

[13] In pursuit of his request for a jury trial, the plaintiff's counsel represented that he did not have witnesses available that day because he believed that he would have two or three days to line up his witnesses while he picked a jury. The court offered to postpone the court trial to permit the plaintiff to organize his witnesses; the city had no objection to the court's proposal. The court further stated that it did not know how long the plaintiff's case was expected to take, but that the court was scheduled to start a jury trial the following day. Due to the court's scheduled jury trial, the court offered to let the plaintiff begin his evidence that day and schedule the remaining witnesses to testify the following week.

[14] The plaintiff agrees that count eight of the second amended complaint concerning the constitutionality of § 9-54 of the city code and § 116.4 of the state code are legal questions that may only be tried to the court.

[15] The plaintiff complains that the city did not make a greater effort to locate him before it demolished the porches. Perhaps the city could have done more to locate the plaintiff, but that question is not determinative of our analysis. There are public policy considerations that come into play. "The law should not discourage officials from taking prompt action to insure the public safety. By subjecting a decision to invoke an emergency procedure to an exacting hindsight analysis, where every mistake, even if made in good faith, becomes a constitutional violation, we encourage delay and thereby potentially increase the public's exposure to dangerous conditions. This quandary is exactly what these emergency procedures are designed to prevent, and is the primary reason they are constitutional acceptable." *Catanzaro* v. *Weiden*, supra, 188 F.3d 63.

In the present case, the court found that the city officials believed in good faith belief that an emergency endangering public safety existed. The record contains competent evidence in the form of photographs of the premises that supports the court's good faith determination. Moreover, as *Hodel* establishes, in cases of emergency, municipal authorities are endowed with discretion, and it is not the role of the court to second guess the authorities' evaluation of the situation. See *Hodel* v. *Virginia Surface Mining & Reclamation Assn.*, supra, 452 U.S. 302.